# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00751-CR

**Guadalupe DeLeon,[1] Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO.50,848, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

Appellant Guadalupe DeLeon appeals his conviction for indecency with a child by contact. *See* Tex. Pen. Code Ann. § 21.11(a)(1) (West Supp. 2001).[2] The jury found appellant guilty and assessed his punishment at twenty years' imprisonment and a $10,000 fine.

### Point of Error

Appellant advances one point of error contending that the trial court erred in admitting into evidence unadjudicated third party extraneous offenses at the guilt-innocence stage of the trial. *See* Tex. R. Evid. 404(b), 403.

---

[1] Appellant's name in the record is spelled both "DeLeon" and "Deleon." The indictment uses a bold-lettered capitalized "**DELEON**." We shall use "DeLeon."

[2] The current code is cited for convenience. Appellant was tried under Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3616 (Tex. Pen. Code § 21.11, since amended, but unchanged as to subsection (a)(1)).

It is a fundamental tenet of our system of jurisprudence that an accused must only be tried for the offense of which he is charged and not for being a criminal generally. *Owens v. State*, 827 S.W.2d 911, 914 (Tex. Crim. App. 1992); *Templin v. State*, 711 S.W.2d 30, 32 (Tex. Crim. App. 1986). Appellant vigorously contends that the trial court, by its evidentiary rulings over timely, repeated, and running objections, deprived him of a fair determination of his guilt of the alleged offense in direct violation of this basic rule. Appellant points out that the bulk of the State's case-in-chief at the guilt-innocence stage of the trial was composed of unadjudicated third party extraneous offenses, mostly remote, having occurred seventeen to twenty-three years prior to trial; that four of the five State's witnesses testified as to extraneous offenses and only the complainant testified as to the alleged offense. Appellant in effect argues that the third party extraneous offenses were improperly admitted for inapplicable and ever-changing purposes and exceptions to the prohibited character conformity evidence rule. Appellant further urges that the probative value, if any, of the third party extraneous offenses was substantially outweighed by unfair prejudice and confusion of issues, and that the trial court erred in overruling his Rule 403 objection. Tex. R. Evid. 403. Appellant claims that the trial court's error or errors affected his substantial rights, influenced the jury and resulted in harm. Tex. R. App. P. 44.2(b).

The State contends that the trial court did not abuse its discretion in admitting the extraneous offense evidence, not in rebuttal but immediately after the complainant's testimony; that the testimony of appellant's stepdaughters, three of whom were from previous marriages/ relationships, were relevant and of probative value and admissible. Tex. R. Evid. 403, 404(b). The State urges that the evidence was admissible for the purposes stated in the trial court's oral and

2

written limiting instructions and particularly to rebut the defensive theory of fabrication, which it argues was raised by the jury voir dire examination, defense counsel's opening statement, and the cross-examination of the complainant. We will reverse the conviction and remand the cause.

**Indictment**

The indictment alleged in pertinent part that appellant in Bell County on or about May 5, 1999:

DID THEN AND THERE WITH THE INTENT TO AROUSE AND GRATIFY THE SEXUAL DESIRE OF THE SAID GUADALUPE DELEON ENGAGE IN SEXUAL CONTACT WITH L.L., A CHILD YOUNGER THAN 17 YEARS OF AGE AND NOT THE SPOUSE OF THE SAID GUADALUPE DELEON, BY THEN AND THERE TOUCHING THE BREAST OF THE SAID L.L.

The elements of the offense charged are (1) appellant, a person, (2) with intent to arouse and gratify his sexual desire, (3) engaged in sexual contact with L.L., (4) by touching the breast of L.L., (5) a child younger than 17 years of age, and (6) not his spouse. These were the elements the State was required to prove beyond a reasonable doubt. Tex. Pen. Code Ann. § 2.01 (West 1994).

**Background**

The sufficiency of the evidence is not challenged. A recitation of the facts is essential to place the sole contention in proper perspective.

L.L., the fourteen-year-old complainant, testified at the October 2-4, 2000 trial that her birth date was October 31, 1985. Her mother, Donna DeLeon, had been married to appellant for

3

several years. The record reflects that L.L., her mother, and appellant lived in a mobile home on the Wilson farm in Bell County where appellant was the foreman. L.L. testified that sometime in the summer of 1998[3] she had been swimming at the Wilson swimming pool when appellant asked her if she would like to go with him to feed the cows, and she agreed; that appellant stopped his truck at a tank or "pond" and asked her if she wanted to go "skinny-dipping"; that when she declined, appellant pulled down both pieces of her bathing suit; that she pulled the pieces up and got out of the truck; that she began walking home; that appellant drove his truck up and told her that he was sorry. Because she did not think he "meant it" when he pulled her bathing suit down, she got back into the truck. Her mother was at work at the time.

L.L. testified that approximately a year later, in the summer of 1999, another incident occurred. She placed the time about one or two months before she gave her statement to the Child Advocacy Center on July 8, 1999. L.L. related that about 10:45 p.m. on the occasion in question her mother was at work as a waitress; that she was lying on a bed with appellant watching a movie on television; that she thought appellant was about to fall asleep when he grabbed and squeezed her stomach and would not let her get up; that she was dressed in a shirt and shorts, and appellant put his hand under her shirt and under her bra and touched her breast. At this time, the telephone rang and appellant turned to answer it. L.L. stated that she was able to get away and ran out of the house to the end of the driveway; that she then retreated to the garage where appellant found her; that appellant told her he had taken two Nyquil sleeping pills instead of one and "that's what made him do that"; and that it was her fault just as much as it was his.

---

[3] The complainant was uncertain as to certain dates and time. Neither the State nor appellant were able to elicit from her any certainty in this regard to a number of events.

4

L.L. testified that thereafter she got in the truck with appellant and they drove towards her mother's place of work, but turned around when her mother passed on her way home. L.L. revealed that she did not tell her mother what happened because the next day appellant threatened to kill her and throw her in a ditch if she did. She was also afraid that her mother would confront appellant in her presence and appellant would do something to her when her mother was not at home; that she knew her mother loved appellant and she did not want to be the one to break up that relationship; that her biological father had a "bad temper" and she did not want him to "do something."

Two days after the incident, L.L. caught appellant watching her while she was in the shower. L.L. then telephoned Stephanie Tipton, her biological father's fiancèe, whom L.L. referred to as her "stepmom." Tipton came and picked up L.L. Later, L.L., her sister, Lindey, and Tipton went together to the Children's Advocacy Center.

L.L. revealed that after the first incident in 1998 she informed Lindey, who lived in Waco, Tipton, and her Aunt Lisa what had happened, and Tipton had later told her father, Gary. The police were never called. L.L. testified that after the 1999 incident she had been living with her father and Tipton. She had not lived again with her mother and appellant. She insisted that her relationship with her mother was good.

On direct examination, the State also elicited from L.L. a denial that she was "making up" stories about appellant in order that her father and mother would "get back together," and a denial that every time she had an argument with her mother and got "mad" she would be "out to get him (appellant)." Upon further prosecutorial interrogation, L.L. admitted that she had told lies, even

5

a "few whoppers," and that she had lied to her mother, her father, and Tipton. L.L. insisted that she was telling the truth to the jury.

On cross-examination, appellant briefly retraced the facts surrounding the extraneous incident in 1998 when L.L. testified that appellant had pulled down her bathing suit. He established that on one occasion that spring or summer, L.L. had not been permitted because of her school grades to go with her mother and appellant to the Frontier Bar where karaoke music was played; that she had an argument with her mother about the denial; and that while they were gone she left a note: "Gone to Dad's." L.L. stayed with her biological father and Tipton until some time in October 1998 when she returned to live with her mother and appellant on the Wilson farm.

Appellant then sought to establish that in the spring or summer of 1999, L.L. got into an argument with her mother over the telephone after L.L. failed to get up that morning and drive a tractor to help appellant haul hay. L.L. could not remember any such incident or argument with her mother.

At the conclusion of L.L.'s testimony, the State had established the ultimate facts of the charged offense along with the extraneous acts or offenses of the 1998 bathing suit incident, the threat to kill, and the shower episode. The State then offered the unadjudicated third party extraneous offense evidence in its case-in-chief from four witnesses. These included L.L.'s sister, Lindey, and three former stepdaughters of appellant's from previous marriages or relationships as to sexual acts he committed on them. This testimony was admitted over Rules 404(b) and 403 objections repeatedly made and running objections obtained. Claims of remoteness were also advanced.

6

Debra Selio, age thirty-four, testified that appellant married her mother, Oralia Calderone, when she (Debra) was a baby. She related that when she was eleven years old, appellant fondled her breasts when her mother was at work; that from age eleven to fourteen years, appellant had sexual intercourse with her once or twice a week until he left to live with Rebecca Vasquez; that she would ask him to stop and he would say that he was sorry, but he continued the practice; and that she did not tell anyone because she was a stepchild and she did not think that she would be believed. Her testimony placed the acts as occurring in the late 1970s and in 1980, some twenty to twenty-three years prior to trial.

Monica Haudek, age thirty-four, daughter of Rebecca Vasquez, testified that in March 1982 and February 1985 appellant had pinned her down once on the floor and once in a bed, but she had gotten him to stop or escaped his grasp. However, she related that in August 1983, when she came out of the bathroom after having been swimming, appellant pushed her into a bed, told her to "shut up," placed his hand over her mouth and threatened to kill her, asked if she was a virgin, and fondled her breasts. Appellant got up when he apparently heard "something." He told Monica that he was sorry and offered to get her a Tylenol pill. Appellant stated that if Monica told her mother she would not be believed. As appellant left the room, Monica's sister, Laurinda, came in. At this point, Monica related that her cousin, Emilio, arrived, asked her to babysit with his child, and she left the house. Monica did not tell anyone except her sister what occurred because when Laurinda had earlier reported a similar sexual assault, their mother had not believed her.

Laurinda Paine, sister of Monica, testified that on the occasion in August 1983 when she was twelve years old, and after Monica left to babysit, appellant raped her twice. Later, she ran

7

away from home and an officer brought her back. When she explained to her family that she had run away because her stepdad had taken her virginity, appellant cried and admitted what he had done. Appellant never touched Laurinda again.

L.L.'s sister, Lindey, age eighteen, testified that she lived with her mother, Donna, and appellant after they married; that sometime in 1998 appellant called her into her mother's bedroom, threw her on the bed, got on top of her, and fondled her breasts. Appellant got off when Lindey threatened to tell her mother if he did not stop. Appellant explained that he had been smoking "weed" laced "with something." Appellant threatened her if she told her mother, but she could not remember the threat. Lindey did not report the incident because she did not think appellant would do it again. Shortly thereafter, Lindey moved to Waco to live with her boyfriend and his parents.

When the State rested, appellant called Johnnie Pace Wilson for whom appellant had worked on a farm. Wilson thought it was sometime in May 1999 that appellant came to her house one morning to tell her what he planned to do that day and ask if there were any special instructions. This was a common occurrence, but on this morning appellant told her that he and a hired neighbor boy would be hauling hay; that L.L. was to drive the tractor, which she loved to do, but she would not wake up. Wilson revealed that later in the morning L.L. came to her house asking where appellant was because she wanted appellant to take her to town. Wilson pointed out that appellant and the neighbor boy were at the back of the barn where the hay had been stacked. L.L., however, left and returned to the mobile home. Later, L.L. returned and asked Wilson to take her to town. Wilson declined. L.L. again asked for appellant and was told that he was somewhere out in the pasture. Wilson and L.L. had a conversation. Wilson learned L.L. had telephoned her mother at

work. While L.L. did not appear upset, she was "mad" at her mother because her mother "hung up." Wilson stated that her conversation with L.L. did not involve any mention of sexual contact or matters. Later, Wilson saw L.L.'s father's pickup at the mobile home. Wilson believed that was the last day L.L. stayed on the farm.

Donna DeLeon, L.L.'s mother, testified that she married appellant in March 1998 and moved with L.L. into the mobile home on the Wilson farm. In May 1998, L.L. was permitted to go to Sea World with friends, the Taylors. When they returned, appellant picked L.L. up, but told L.L. to change clothes because she was skimpily dressed. On the way home, L.L. called appellant a "S.O.B." When Donna arrived home, L.L. began "back talking" to her. L.L. was informed that she could not go that night to the Frontier Bar with her mother and appellant and reminded L.L. that she had already been grounded because of her school grades. When Donna and appellant arrived home, they found a note that L.L. had gone to her father's house. Donna went there, an argument ensued, and her arm was broken by L.L.'s father. Appellant took her to the hospital when she came home. Donna placed the date as May 24, 1998. There was no mention at the time of any sexual contact between appellant and L.L.

In June 1998, Donna talked to her other daughter, Lindey, and then L.L. confirmed there had been sexual misconduct by appellant (the bathing suit incident). Donna stated that L.L. did not act differently and continued to visit on weekends. Donna had her doubts about the story she had been told. Later, Donna talked with L.L.'s father who had overheard "a conversation." Thereafter, Donna did not believe any sexual contact had occurred between appellant and L.L. In October 1998, L.L. moved back to the mobile home with Donna and appellant. The move was L.L.'s idea as well

9

as her father's. According to Donna, L.L. continued to live there until July 1999 when the hauling hay incident occurred and Donna and L.L. got into an argument.

Donna related that about six weeks before the trial, L.L. called her twice from a friend's house in the early morning hours. L.L. had had an argument with her father. It was Donna's understanding that L.L. wanted to come stay with Donna and appellant, but Donna could not permit that under the circumstances.

On cross-examination, Donna related that L.L. had told her about the 1998 bathing suit incident but she did not report the matter to authorities because she thought L.L. was "making it up" because L.L. was "mad." Further, the prosecutor elicited that Donna felt that both her daughters were lying. After Donna's testimony, appellant rested his case at the guilt-innocence stage of the trial.

**Discussion**

With this background, we examine appellant's contention on appeal. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401; *Johnson v. State*, 932 S.W.2d 296, 300 (Tex. App.—Austin 1996, pet. ref'd). All relevant evidence is admissible except as otherwise provided by constitutions, statutes, or rules. Tex. R. Evid. 402; *Corley v. State*, 987 S.W.2d 615, 618 (Tex. App.—Austin 1999, no pet.). "Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion." *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. We review a trial court's analysis of the probative value of an extraneous offense under an abuse of discretion standard. *See Johnson*, 932 S.W.2d at 302.

Rule 404(b) provides:

> **Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Tex. R. Evid. 404(b).

This rule and Rule 404(a) embody the traditional Texas rule that has approved the general principle "that an accused person is entitled to be tried on the accusation made in the State's pleadings and not on some collateral crime, or for being a criminal generally." *Cantrell v. State*, 731 S.W.2d 84, 88 (Tex. Crim. App. 1987). This is because such evidence is inherently prejudicial and the defendant's alleged " propensity to commit crimes" is not material to whether he is guilty of the specified conduct which is charged. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex. Crim. App. 1983); *see also* 1 Steven Goode, et al., *Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal* § 404.6.1 (2d ed. 1993); *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1990) (noting that evidence of a defendant's bad character traits possesses such a devastating impact on a

11

jury's rational disposition towards other evidence, and is such poor evidence of guilt, that an independent mandatory rule was created for its exclusion).

The general rule is subject to the listed exceptions in Rule 404(b), but these exceptions and others drawn from case law are not exclusive or exhaustive. *Goode*, § 404.6.1; *Pondexter v. State*, 942 S.W.2d 577, 583-84 (Tex. Crim. App. 1996); *Cantrell*, 731 S.W.2d at 89. Extraneous offense evidence is admissible to rebut defensive theories. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994). The same is true of extraneous criminal acts showing "consciousness of guilt," *id.* at 299, and to show physical capacity to commit a crime, *Mendiola v. State*, 995 S.W.2d 175, 177-82 (Tex. App.—San Antonio 1999), *rev'd on other grounds*, 21 S.W.3d 282 (Tex. Crim. App. 2000). Notwithstanding Rule 404's inclusion of the general rule, certain extraneous offense evidence is admissible in designated sexual offense cases where a child is the victim of the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2001).

The State's only witness as to the alleged offense was the fourteen-year-old complainant.[4] There was no outcry witness, and no law enforcement officer, social worker, or child abuse expert witness was called to testify. The bulk of the State's case-in-chief was the testimony of the other four witnesses as to the details of the unadjudicated third party extraneous offenses which was offered immediately after the complainant's testimony. Extraneous offense evidence is not admissible merely to bolster the testimony of the complainant. *See Owens*, 827 S.W.2d at 916.

Actually, there were extraneous offenses elicited by the prosecution during L.L.'s testimony. These were not of the third party variety but extraneous matters between L.L. and

---

[4] The State apparently intended to use only one witness because on voir dire examination the prospective jurors were asked if they could convict on the basis of one witness's testimony.

12

appellant. The State on direct examination of L.L. began by eliciting the 1998 extraneous act of the bathing suit incident before offering any evidence of the 1999 offense charged in the indictment. There was no objection to this evidence apparently because it was admissible under article 38.37. Tex. Code Crim. Ann. art. 38.37 (West Supp. 2001).[5] In addition to the 1998 extraneous act, L.L. testified that the day after the charged offense occurred in 1999, appellant threatened to kill her and throw her in a ditch if she told her mother. There was no objection to this extraneous offense for it would appear to be admissible under article 38.37 and as an act revealing a "consciousness of guilt." *See Ransom*, 920 S.W.2d at 299. Moreover, the complainant also testified without objection that two days after the charged offense occurred she discovered appellant watching her shower. These extraneous acts or offenses were before the jury before any attempt was made to introduce the third party extraneous offense evidence.

When appellant advanced his Rules 404(a) and 403 objections to the admission of the third party extraneous offense evidence, there was a hearing in the absence of the jury. As the

---

[5] This statute, applicable to the instant offense and certain other sexual offenses with a child under seventeen years of age, provides in section 2:

> Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence [now *see* Texas Rules of Evidence], evidence of other crimes, wrongs, or acts committed by the defendant against a child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including (1) the state of mind of the defendant and the child; (2) the previous and subsequent relationship between the defendant and the child.

Article 38.37, section 2 supersedes in certain sexual cases (including indecency with a child) the application of Rules 404, 405, and even 402 of the Texas Rules of Evidence. *See Conrad v. State*, 10 S.W.3d 43, 46 (Tex. App.—Texarkana 1999, no pet.); *Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd on other grounds*, 990 S.W.2d 274 (Tex. Crim. App. 1999).

proponent of the evidence, the prosecutor advanced the purposes of intent, common plan, scheme, motive, design, lack of mistake, and to rebut the defensive theory of fabrication. With regard to the latter theory, the prosecutor relied in part on voir dire examination by appellant, and the opening statement to the jury by defense counsel to the effect that the evidence "would show" that when the complainant had arguments with her mother, got "mad" and left home, it was then that she claimed "these things took place." Appellant argued that the opening statement did not open the door to the admission of third party extraneous offense evidence.

The trial court announced that it had reviewed the State's notice of intention to use extraneous offenses pursuant to Rule 404(b), considered the voir dire examination, appellant's opening statement to the jury and the testimony of the complainant, and overruled appellant's Rule 404(b) objection "based on the evidence."[6]

In clarification, the trial court ruled that the third party extraneous offense evidence was relevant and being admitted for the purposes of plan, scheme, motive, identity "and all issues argued by the State." Appellant's Rule 403 objection was overruled. Appellant was given a running objection to all of the extraneous offense evidence.

At the conclusion of each extraneous offense witness's testimony, the trial court *orally* instructed the jury that it could consider that testimony only in determining motive, opportunity, plan, knowledge, identity or absence of mistake or accident. *See* Tex. R. Evid. 105(a). Rebuttal of a defensive theory was not mentioned. The purposes for which the complained-of testimony could be used was later broadened. The *written* jury instructions told the jury the third party extraneous

---

[6] Only the complainant's testimony constituted evidence; the notice of intention, the voir dire examination and opening statement were not.

14

offense evidence could only be considered for the purposes of showing motive, intent, design, plan, common scheme, knowledge, lack of mistake or accident, impeachment, rebuttal of a defensive theory, and opportunity. The nature of the defensive theory remained unidentified in the jury instructions.

When a defendant objects on the ground that evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the State must show that the evidence has relevance apart from showing character conformity. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996). The "mere fact that a party introduces [offers] evidences for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), does not, in itself, make the evidence admissible." *Id.* at 719. Extraneous offense evidence will generally be relevant but the permissible purposes for which the State is offering it may not be. *Id.* We shall examine the purposes for which the extraneous offense evidence here was offered.

**Intent**

Under the indictment, the State was required to establish that the sexual contact was committed by appellant with the intent to arouse and gratify his sexual desire. Intent can be inferred from acts, words, and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982). The requisite guilty intent could certainly be inferred by the jury from the complainant's testimony about how in 1999 appellant touched her breast as alleged as well as from the surrounding circumstances. *See Johnson*, 932 S.W.2d at 303; *Zuliani v. State*, 903 S.W.2d 812, 827 (Tex. App.—Austin 1995, pet. ref'd). The testimony on direct examination of the complainant about the extraneous 1998 bathing suit incident

15

could also form a basis for the inference of the required intent. In addition, the complainant testified that appellant threatened to kill her if she told what happened, and that later she observed appellant watching her shower. "Where the State's direct evidence . . . clearly shows the intent element of the crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination of the State's witnesses, the offer of other crimes is unjustified due to the lack of relevancy." *Rankin v. State*, 974 S.W.2d 707, 719 (Tex. Crim. App. 1996) (op. on reh'g). The State may not introduce extraneous offenses as circumstantial evidence of an element in its case-in-chief if that element can readily be inferred from other uncontested evidence. *Clark v. State*, 726 S.W.2d 120, 122 (Tex. Crim. App. 1986).

### Identity

Identity was never an issue in the case *sub judice*. The State proved identity by the complainant's direct and positive identification of appellant, her stepfather. The issue of identity was not raised on cross-examination. The extraneous offenses were not admissible on the issue of identity. *See Elkins v. State*, 647 S.W.2d 663, 666 (Tex. Crim. App. 1988). Moreover, "system" is not a purpose for admitting extraneous offense evidence when identity is not an issue. *Owens*, 827 S.W.2d at 916.

### Motive

Motive, like intent and identity, is a recognized exception set forth in Rule 404(b). Motive is not an essential element of a criminal case and need not be proved to sustain the commission of the offense. *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982); *Zuliani*, 903 S.W.2d at 826-27. The admissibility of extraneous offense evidence is usually required to relate

or pertain to other acts by the accused against the complainant in the offense for which the accused is presently being tried. *Foy v. State*, 593 S.W.2d 707, 708-09 (Tex. Crim. App. 1980); *Kiser v. State*, 893 S.W.2d 277, 282 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *Massey v. State*, 826 S.W.2d 655, 658 (Tex. App.—Waco 1992, no pet.). In light of the evidence properly admitted, the admission of the third party extraneous offenses, most of them being remote, had no bearing on the undisputed issue of motive.

### Accident or Mistake

A claim that the alleged act was done by accident or mistake is a defensive issue which must be raised. Evidence tending to show that an alleged touching was not accidental or a mistake would not be relevant if the defendant has yet to make a claim of accident or mistake. *Rankin*, 974 S.W.2d at 719; *Prior v. State*, 647 S.W.2d 956, 959 (Tex. Crim. App. 1983). Using accident or mistake as the basis for the introduction of extraneous offenses may be pointless if the defendant has not claimed accident or mistake. *Prior*, 647 S.W.2d at 959. In the instant case, appellant denied the alleged offense by his plea of not guilty, and never raised a claim that the alleged touching was by accident or mistake.[7] In using accident and mistake as a purpose for admitting the extraneous offenses when they were not relevant was error on the part of the trial court which could have served only to confuse the jury.

---

[7] There is no defense of accident in the penal code. *See Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982); *Garza v. State*, 974 S.W.2d 251, 256 (Tex. App.—San Antonio 1998, pet. ref'd); *cf. Brown v. State*, 955 S.W.2d 276, 279-80 (Tex. Crim. App. 1997). "Mistake of fact" is a statutory defense. Tex. Pen. Code Ann. § 8.02 (West 1994). Likewise, "mistake of law" is a statutory defense. *Id.* § 8.03 (West 1994). The trial court in its instructions did not distinguish between the statutes.

**Impeachment**

Impeachment means "to discredit the veracity of a witness." Black's Law Dictionary 755 (7th ed. 1999); *see also Moreno v. State*, 944 S.W.2d 685, 689 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 22 S.W.3d 482 (Tex. Crim. App. 1999); *Lopez v. State*, 643 S.W.2d 431, 435 (Tex. App.—Corpus Christi 1982, no pet.). Impeachment is not among the listed exceptions in Rule 404(b). Testimony admitted for impeachment purposes only is without probative value and cannot be considered as substantial evidence. *Adams v. State*, 862 S.W.2d 139, 147 (Tex. App.—San Antonio 1993, pet. ref'd). It should be so limited in the court's charge. *Id.* at 148.

Appellant did not impeach the complainant's testimony. If it be argued that the extraneous offense evidence was necessary to rehabilitate the complainant, it is observed that testimony about an extraneous offense involving *another* person does not rehabilitate the complainant. *Webb v. State*, 36 S.W.2d 164, 181 n.9 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Hernandez v. State*, 900 S.W.2d 835, 837 (Tex. App.—Corpus Christi 1995, no pet.)

**Rebuttal of a Defensive Theory**

Extraneous offense evidence is admissible to rebut a defensive theory raised. *Ransom*, 920 S.W.2d at 301; *Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1998); *Castillo v. State*, 865 S.W.2d 89, 92 (Tex. App.—Corpus Christi 1993, no pet.). However, offering evidence for a purpose other than character conformity or any listed exception in Rule 404(a) does not by itself make the evidence admissible. *Rankin*, 974 S.W.2d at 709. The extraneous offense must also be relevant to a "fact of consequence in the case." *Id.*

An issue may become contested as a result of impugning cross-examination authorizing extraneous offense evidence. *See Robinson v. State*, 701 S.W.2d 895, 899 (Tex. Crim. App. 1985). Appellant did cross-examine the complainant. The exercise of the right of cross-examination will not, in and of itself, open the door to the admission of extraneous offenses. *Caldwell v. State*, 477 S.W.2d 877, 879 (Tex. Crim. App. 1979). Rather, it is the response elicited from a State's witness on cross-examination which may allow the prosecution to subsequently introduce an extraneous offense. *Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988); *Walker v. State*, 588 S.W.2d 920, 922 (Tex. Crim. App. 1979) (involving the manner of cross-examination). The cross-examination must seriously weaken the State's testimony. *See Albrecht v. State*, 486 S.W.2d 97, 102 (Tex. Crim. App. 1972); *Crank*, 761 S.W.2d at 341. The cross-examination must effectively contest a fact that testimony was offered to prove. *Clark*, 726 S.W.2d at 122. The manner of cross-examination was neither vigorous or impugning. No defensive theory was raised thereby.

Appellant did imply in his opening statement that the defense would show that when the complainant "claims these things took place" there was always an argument with her mother. It is this opening statement that the State contends laid the basis for the defensive theory of fabrication.

Appellant did establish that in 1998 the complainant got "mad" at her mother for not being allowed to go to the Frontier Bar and moved to her father's house that very night. But, other than being in the same summer, this matter was never tied to the 1998 extraneous bathing suit incident. No nexus was established. Appellant attempted to prove that the complainant got "mad"

19

at her mother in 1999 in dispute over the complainant's failure to drive a tractor to haul hay. The complainant, however, had no recollection of any such incident.

It was the State, not appellant, who established that the complainant told lies, some "whoppers," but was now telling the jury the truth. The State may not by "prompting or maneuvering" set up a defensive theory which it may then rebut through the use of extraneous offense evidence. *See Shipman v. State*, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980); *Mendiola*, 995 S.W.2d at 178; *Mares v. State*, 758 S.W.2d 932, 936 (Tex. App.—El Paso 1988, pet. ref'd); *cf. Hammett v. State*, 713 S.W.2d 102, 105 n.4 (Tex. Crim. App. 1986); *Wheeler v. State*, 988 S.W.2d 363, 367 (Tex. App.—Beaumont 1999, no pet.).

When the State offered the extraneous offenses to rebut the alleged defensive theory of fabrication, that defense had not been raised. The voir dire examination and the opening statement to the jury did not constitute evidence. The defensive issue was not raised by the cross-examination of the complainant, and appellant had not yet had an opportunity to present his evidence. The trial court erred in admitting the extraneous offense evidence on this basis.

It is true that when extraneous offenses are improperly admitted in the State's case-in-chief, subsequently admitted evidence can render the premature admission harmless. *Siguerios v. State*, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985); *Silva v. State*, 831 S.W.2d 819, 821-22 (Tex. App.—Corpus Christi 1992, no pet.); *Michel v. State*, 745 S.W.2d 497, 498 (Tex. App.—Corpus Christi 1988, pet. ref'd). After the admission of the extraneous offenses, appellant did call Donna DeLeon, the complainant's mother, and Johnnie Pace Wilson. These witnesses established that L.L. had an argument with her mother about the hay-hauling incident in 1999. Wilson placed the time in

20

May and the mother placed it in July 1999. The argument was never tied to the alleged offenses. Appellant did not raise a defensive theory of fabrication by such subsequent testimony. The State did elicit from Donna DeLeon on cross-examination that she thought L.L. and her sister were both lying and made use of this in jury argument. Here again, the State may not prompt or maneuver to set up a defensive theory it may then rebut by use of extraneous offenses. *Shipman*, 604 S.W.2d at 185. The subsequently introduced evidence did not render the extraneous offense evidence admissible.

### Other Purposes

We have examined the other purposes for which the trial court admitted the mostly remote unadjudicated third party extraneous offense evidence including opportunity, knowledge, design, plan and common scheme. We find that these purposes were not material issues in the case having no relevance beyond demonstrating that appellant was a criminal generally. Further, the State has not briefed or adequately shown that these exceptions or purposes were involved.

Because the trial court failed to identify any legitimate reason for allowing the third party extraneous offense evidence and our independent review of the record reveals none, we find it an abuse of discretion for the trial court to have admitted the evidence.

Even if it could be validly argued that for some reason the third party extraneous offense evidence had a relevance apart from the character conformity as required by Rule 404(b), appellant also objected to the testimony on the basis of Rule 403. The trial court conducted a hearing and held that the complained-of testimony's probative value substantially outweighed any unfair prejudice.

Rule 403 provides:

Although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence.

Almost all evidence offered by the prosecution will be prejudicial to the defendant. Only evidence that is *unfairly* prejudicial should be excluded. *Ford v. State*, 26 S.W.3d 669, 675 (Tex. App.—Corpus Christi, 2000, no pet.); *Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Unfair evidence is that which has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Montgomery*, 810 S.W.2d at 389; *Caballero*, 919 S.W.2d at 922. Rule 403 requires exclusion only if the danger of unfair prejudice substantially outweighs the probative value of the evidence. There is a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389; *Blakeney*, 911 S.W.2d at 515. So long as the trial court operates within the boundaries of its discretion, there is no abuse of discretion, and its decision will not be disturbed on appeal. *McFarland v. State*, 845 S.W.2d 827, 837 (Tex. Crim. App. 1992). However, if the record reveals criteria reasonably conducive to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then the trial court acted irrationally in admitting it and abused its discretion. *Rachal*, 917 S.W.2d at 808 (citing *Montgomery*, 810 S.W.2d at 392).

Under the circumstances, the inherent probativeness and inherent prejudice of the third party extraneous offenses weigh in favor of exclusion. If the evidence was relevant at all, it had only marginal probative value. By contrast, the danger of unfair prejudice from such extraneous offenses and their details was substantial. "Both sexually related misconduct and misconduct involving

22

children are inherently inflammatory." *Montgomery*, 810 S.W.2d at 397. There was the grave potential for a decision here on an improper basis as the jurors may have lost sight of the specific issues framed by the indictment they were called upon to decide and convicted appellant out of revulsion against his being a serial child molester of step-daughters, even though most of the evidence was remote. Because all factors militate in favor of a finding that the probativeness of the unadjudicated third party extraneous offense evidence was substantially outweighed by the danger of unfair prejudice, we conclude the trial court abused its discretion in admitting the evidence.

### Harmfulness of Error

We now consider whether the trial court's error is reversible. Tex. R. App. P. 44.2(b).[8] The error here is not constitutional, so we must determine if it affects substantial rights. A substantial right is violated when the error made the subject of complaint had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The bulk of the State's case-in-chief was composed of highly prejudicial extraneous offense testimony. More time was spent developing the extraneous wrongdoing than proving the ultimate issues alleged in the indictment resulting in greater likelihood of juror distraction from the main issues. Most of the reasons given for the introduction of the extraneous offenses were inapplicable and the laundry list of reasons given in limiting instructions could have only served to confuse the jury. We do not harbor

---

[8] Rule 44.2(b) provides:

> (b) Other Errors. Any other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

23

"grave doubts"[9] but have no doubt that the error was harmful as having a substantial and injurious effect and influence in determining the jury's verdict. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Appellant's point of error is sustained. The judgment is reversed and the cause remanded.

_

John F. Onion, Jr., Justice

Before Justices B. A. Smith, Puryear and Onion[*]

Reversed and Remanded

Filed: November 29, 2001

Publish

---

[*]    Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

---

[9]    *See United States v. Lane*, 474 U.S. 439, 449 (1986).