# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00448-CR
NO. 03-12-00449-CR
NO. 03-12-00450-CR
NO. 03-12-00451-CR

**Joshua Rendon, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NOS. D-1-DC-11-200600, D-1-DC-11-301501, D-1-DC-11-301646 & D-1-DC-11-301718
HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Joshua Rendon guilty of three counts of burglary of a vehicle and one count of unauthorized use of a motor vehicle. *See* Tex. Penal Code §§ 30.04, 31.07. Following Rendon's pleas of "true" to enhancement paragraphs, the trial court sentenced Rendon to eight years' confinement for one of the burglary-of-a-vehicle convictions and ten years' confinement for each of the remaining convictions, with the sentences to run concurrently. On appeal, Rendon asserts that the trial court erred in (1) admitting evidence of an extraneous offense and (2) denying his motion for mistrial following the State's impermissible comment on Rendon's failure to testify. We will affirm the judgments of the trial court.

## BACKGROUND

This case involves four vehicular burglaries, all of which occurred within a twenty-four hour period.

On February 3, 2011, Shannon Evans was leaving her home when she discovered that her gold-colored Honda CR-V was not in front of her house where she parked it. Evans would later testify that she had not given anyone permission to use her vehicle, and she suspected that it had been stolen. Evans did not see who took her vehicle, nor did she know exactly when it was taken. She later reported the vehicle stolen.

That same morning, between 9:00 and 9:30 a.m., Matthew Puryear returned to his vehicle to find that his driver's-side rear window had been "busted open." Puryear later testified that his backpack, drumsticks, tambourine, compact discs, and a duffle bag containing toiletries and his medication had been taken from his car. Puryear had parked his car on the street the night before, and he did not see who broke into his vehicle.

Less than two hours after Puryear discovered that his vehicle had been burglarized, Rachel Balderach parked her car on the street near Zilker Park so that she could begin her morning run. When she returned to her vehicle, she discovered that her vehicle's window had been broken and someone had stolen her purse, which contained her wallet and credit cards.[1] Balderach later testified that her stolen credit card was used at a local grocery store and a gas station. She also stated that when police returned her items to her, approximately $100 was missing from her wallet. Balderach did not see who burglarized her vehicle.

---

[1] At trial, Balderach was never asked how long her run lasted or when she returned from her run. Therefore, it is not clear exactly when her vehicle was burglarized. However, given the testimony outlined below, the burglary must have occurred between 10:00 and 11:30 a.m.

Finally, at approximately 11:00 a.m. that same morning, Christopher Chancey parked his vehicle in a parking lot near the Barton Creek Greenbelt before his morning run. Chancey later testified that it was cold that morning, and he remained in his parked car while he debated whether he would in fact go running. While he was in his car, Chancey observed a tan or gold Honda CR-V drive through the parking lot and park next to his car. Chancey noted that it "felt weird" that the driver of the CR-V—whom he described as a Hispanic male with black hair—was parking directly next to his vehicle even though the parking lot was otherwise empty. Chancey began his run, but within two minutes he decided to turn back and check on his car. When he returned, Chancey discovered that the CR-V was gone, that his window had been broken in, and that someone had taken approximately $2 in change and his vehicle's owner's manual.

Shortly thereafter, Officer Raul Carrillo with the Austin Police Department observed a gold Honda matching the description of a stolen vehicle drive and park in front of a home in East Austin. Officer Carrillo "ran the license plate" and confirmed that it was Evans's stolen Honda CR-V. Officer Carrillo parked his police cruiser, and he observed the male driver—whom he later identified as Rendon—exit the vehicle and walk toward the back of a nearby home, cut through the backyard, and approach the passenger side of another parked vehicle. Officer Carrillo activated his overhead lights and Rendon ran away on foot, ignoring Carrillo's command to "freeze." Officer Carrillo put out a description of Rendon and began his pursuit.[2] Rendon was soon apprehended by other police officers in the area. When he was arrested, Rendon had the keys to Evans's stolen

___

[2] Officer Carrillo did not testify as to when he observed Rendon parking the stolen vehicle. However, other officers testified that they responded to Officer Carrillo's dispatch that Rendon was fleeing at 11:38 a.m.

Honda CR-V and Balderach's driver's license and credit card in his pockets. Police also recovered Balderach's purse and wallet, Puryear's backpack and other stolen property, and Chancey's owner's manual in Evans's stolen vehicle.

Rendon was indicted for one count of unauthorized use of a motor vehicle, three counts of burglary of a vehicle, and one count of evading arrest. *See id.* §§ 30.04, 31.07, 38.04. Rendon pleaded guilty to evading arrest and to the burglary of Chancey's vehicle, but pleaded not guilty to the remaining counts. At trial, the State called Evans, Puryear, Balderach, and Chancey, who testified about the thefts as outlined above and identified their stolen property that was recovered by police officers. The State also called police officers who were involved in Rendon's arrest and the resulting investigation. The jury found Rendon guilty of all charges. Rendon elected to have the trial court assess punishment. The court sentenced Rendon to eight years' confinement for the two offenses to which he pleaded guilty and ten years' confinement for each of the remaining offenses, with sentences to run concurrently.[3] This appeal followed.

## DISCUSSION

Rendon raises two separate issues on appeal. First, he asserts that the trial court erred in admitting Chancey's testimony about the events leading up to the burglary of his vehicle because Rendon had already pleaded guilty to that offense, and therefore that burglary was an extraneous offense that was not relevant to proof of the remaining charges. *See* Tex. R. Evid. 404(b). Second, Rendon claims that the trial court erred in denying his motion for mistrial after the State

---

[3] Rendon did not appeal his judgment of conviction for evading arrest, and that judgment is not before us.

4

impermissibly commented on Rendon's failure to testify.[4] We will address Rendon's second appellate issue first.

**Impermissible jury argument**

In his second issue, Rendon asserts that the trial court erred in denying his motion for mistrial after the State impermissibly commented on his failure to testify. Specifically, Rendon argues that the State's comments "were so direct that no instruction was sufficient to overcome their effect on the jury." Therefore, according to Rendon, the trial court's instruction to disregard the State's comment was insufficient to cure the comment's harm, and thus the only effective remedy was a mistrial.

Near the beginning of its closing argument, the State made the following comments to the jury:

> There was a lot of cross-examination in this case. Defense asked the witnesses many, many, many questions. And there is no doubt that the defendant got a good defense in this case. . . . There were a lot of things talked about in this case, but there was nothing that explains what [Rendon] was doing driving Shannon Evans' stolen car or why her car key was found in his pocket, or why Rachel Balderach's driver's license was in his pocket or her stolen credit card was in his pocket. There absolutely was no good explanation for that other than he is guilty of these offenses.

---

[4] We note that neither of these two appellate issues could arguably undermine the validity of Rendon's open guilty pleas, which he made prior to the State's opening statement. Therefore, we conclude that Rendon's valid guilty plea to burglarizing Chancey's vehicle waived his right to appeal these issues in cause number 03-12-00451-CR because his judgment of guilt for that offense "was rendered independent of, and is not supported by, the error" alleged in Rendon's appeal. *See Young v. State*, 8 S.W.3d 656, 667 (Tex. Crim. App. 2000). Therefore, we will address Rendon's appellate issues only as they relate to the three charges to which he pleaded not guilty.

If they can explain what the key was doing in his pocket, if they can explain why he was driving that car, if they can explain why he has Rachel's stuff in his pocket, then let him go.

Rendon's trial counsel objected, asserting that the State's argument was "an impermissible comment on my client's silence." The trial court sustained the objection, reminded the jury that Rendon's decision not to testify could not be considered as evidence, and instructed the jury to disregard the State's remarks. Rendon's counsel moved for a mistrial, which the trial court denied.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where prejudice is incurable, will mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "[W]hether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Id.* In determining whether an improper jury argument warrants a mistrial, we apply the following "*Mosley* factors":

1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's comments);

2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and

3) the certainty of conviction absent the misconduct (the strength of the evidence supporting conviction).

*See Archie*, 221 S.W.3d at 700 (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)). We will assume without deciding that the State's argument was in fact a comment on Rendon's failure to testify. With this assumption in mind, we will apply the *Mosley* factors.

6

First, the State's comment was very brief, did not directly reference Rendon's failure to testify, and only discussed Rendon's unexplained possession of stolen property. Thus, the trial court could have reasonably concluded that the State's misconduct was not so severe as to necessarily mandate a mistrial. *See id.* (noting that comment on accused's failure to testify was brief and only related to some of the charges).

Furthermore, the trial court sustained Rendon's objection to the State's comments, immediately instructed the jury to disregard them, and included a jury-charge instruction that again explained that Rendon's decision not to testify could not be considered in the jury's deliberations. Given these curative measures, the trial court could have reasonably concluded that it "ameliorated any potential harm" from the State's allegedly improper comments. *See id.*; *Bower v. State*, 769 S.W.2d 887, 907 (Tex. Crim. App. 1989) ("Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury to disregard . . . ."), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991).

Finally, the State's case against Rendon on all of the charges was very strong. The State introduced evidence that (1) Officer Carrillo observed Rendon operating Evans's vehicle within hours of its being reported stolen; (2) Evans did not give Rendon permission to use her vehicle; (3) Rendon fled when Officer Carrillo approached him and ignored Carrillo's commands to freeze; (4) Rendon had Evans's car keys in his pocket when he was arrested; (5) Puryear's property was recovered from Evans's vehicle within twelve hours of that property being stolen; and (6) within two hours of the burglary of Balderach's vehicle, Rendon had Balderach's driver's license and credit card in his pocket and Balderach's remaining stolen property was recovered from Evans's stolen vehicle.

7

Given this overwhelming evidence, the trial court could have reasonably concluded that regardless of the State's comments on Rendon's failure to testify, Rendon would almost certainly have been convicted of the charges against him. *See Archie*, 221 S.W.3d at 700 (noting that overwhelming inculpatory evidence indicates punishment would likely be the same regardless of improper jury argument); *see also Tabor v. State*, 88 S.W.3d 783, 786 (Tex. App.—Tyler 2002, no pet.) ("To warrant an inference of guilt based solely on the possession of stolen property, it must be established that the possession was personal, recent, and unexplained.").

Therefore, all three *Mosley* factors support the trial court's determination that a mistrial was not warranted in this case. *See Archie*, 221 S.W.3d at 699–700. Thus, we cannot conclude that the trial court abused its discretion in denying Rendon's motion for mistrial. We overrule Rendon's second appellate issue.

**Extraneous offense**

In his first issue on appeal, Rendon asserts that the trial court erred in admitting Chancey's testimony about the burglary of his vehicle. Specifically, Rendon argues that because he had already pleaded guilty to that burglary, Chancey's testimony was impermissible extraneous-offense evidence that was introduced to show that Rendon was a burglar and therefore was more likely to have committed the remaining burglaries. *See* Tex. R. Evid. 404(b). Rendon also argues that even if the testimony was offered for a permissible purpose under Rule 404(b) of the Rules of Evidence, its probative value was substantially outweighed by its prejudicial effect. *See id.* 403.

Rule 404(b) states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however,

8

be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Generally, we review a trial court's ruling on extraneous-offense evidence for an abuse of discretion. *De la Paz v. State*, 279 S.W.3d, 343 (Tex. Crim. App. 2009). However, whether the trial court abused its discretion is only part of the analysis.

If the trial court errs in admitting extraneous-offense evidence, we will reverse the trial court's judgment only if the error affected the substantial rights of the accused. *See* Tex. R. App. P. 44.2(b); *DeLeon v. State*, 77 S.W.3d 300, 316 (Tex. App.—Austin 2001, pet. ref'd). This non-constitutional error is not grounds for reversal if, "after examining the record as a whole," there is "fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (internal quotations omitted); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). "A conviction is tainted if the error is of such a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming the other evidence." *Zuliani v. State*, 903 S.W.2d 812, 828 (Tex. App.—Austin 1995, pet. ref'd). For purposes of this case, we will assume without deciding that the trial court erred in admitting Chancey's testimony, because the record is clear that Rendon suffered no harmful error even if the trial court abused its discretion.

The State presented overwhelming evidence of Rendon's guilt. Officer Carrillo testified that he observed Rendon driving Evans's stolen vehicle within hours of its theft and that Rendon fled when Carrillo approached him. Once Rendon was apprehended, police officers recovered stolen property from Puryear's and Balderach's vehicles on Rendon's person and in Evans's stolen vehicle. Thus, even without Chancey's brief testimony, the State presented overwhelming evidence

that Rendon was guilty of the offenses alleged, and the majority of this evidence was not contradicted or undermined by the defense. *Compare DeLeon*, 77 S.W.3d at 316 (concluding admission of extraneous-offense evidence was harmful where "[m]ore time was spent developing the extraneous wrongdoing than proving the ultimate issues alleged in the indictment").

Furthermore, Rendon pleaded guilty to burglarizing Chancey's vehicle in the presence of the jury. "A plea of guilty to a felony before a jury admits the existence of all incriminating facts necessary to establish guilt." *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987). Therefore, the jury was aware at the outset of the trial that Rendon had burglarized Chancey's vehicle. Chancey's testimony about this burglary was very brief. He testified that he observed a Hispanic male parked near his vehicle in a yellow or gold Honda CR-V minutes before his vehicle was burglarized. Given that the jury was already aware that Rendon was guilty of this burglary and Officer Carrillo testified that he observed Rendon operating Evans's vehicle, it is unlikely that Chancey's brief recitation of the facts surrounding the minutes leading up to the burglary disrupted the jury's orderly evaluation of the evidence. *See Zuliani*, 903 S.W.2d at 828.

Finally, the substance of Chancey's testimony was repeated in Officer Daniel Perez's explanation of his investigation of Chancey's burglarized vehicle. Officer Perez testified without objection that he responded to Chancey's 911 call that his vehicle had been burglarized. Perez testified that Chancey "advised there was a gold SUV parked next to him with a male subject that had a hat and jacket on, and when he walked away from his vehicle, he didn't feel right so he came back 10 minutes later. That's when he saw the gold, tan Honda SUV gone and his front window broken out." This was effectively the same information Chancey provided in his testimony, and thus

10

Chancey's testimony, even if inadmissible, was cumulative of other evidence that was admitted without objection. *See Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999) (noting that there is no harm in admitting evidence if same evidence subsequently admitted without objection).

Given the strength of the State's case, the limited scope of Chancey's testimony, the fact that Rendon pleaded guilty before the jury to burglarizing Chancey's vehicle, and Officer Perez's repeating the substance of Chancey's testimony without objection, there is fair assurance in the record that any potential error in admitting Chancey's testimony did not influence the jury. *Motilla*, 78 S.W.3d at 355. Thus, we conclude that any potential error in admitting Chancey's testimony was harmless. We overrule Rendon's first appellate issue.

## CONCLUSION

Having overruled Rendon's two issues on appeal, we affirm the judgment of the trial court.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: August 14, 2013

Do Not Publish