NUMBER 13-09-00169-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ALAINE DENISE VORHEIER, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 25th District Court 

of Guadalupe County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Alaine Denise Vorheier, of four counts of sexual assault
of a child, see Tex. Penal Code Ann. § 22.011(a)(2)(C) (Vernon Supp. 2009), three counts
of indecency with a child by contact, see id. § 21.11(a)(1), and one count of prohibited
sexual conduct. See id. § 25.02(a)(2). The jury assessed punishment at eighteen years'
imprisonment for each count of sexual assault of a child and for each count of indecency
with a child by contact and ten years' imprisonment for the offense of prohibited sexual
contact. The sentences were ordered to run concurrently. In six issues, appellant
complains that: (1) the evidence is legally and factually insufficient to support her
convictions; (2) she was denied the right to a speedy trial; and (3) this Court does not have
jurisdiction of this appeal. We affirm. (1) 

I. Factual Background 


A. State's Evidence 

 When J.V. was five or six years old, his parents divorced, and he began living in
Converse, Bexar County, Texas with his biological father, who subsequently married
appellant. J.V. testified that from the age of six to the time he was thirteen, his relationship
with appellant was "just like any other mother and son." However, when J.V. was thirteen
years old, the relationship became sexual. In December 2003, J.V. and appellant were at
home while J.V.'s father attended a Christmas party. While J.V. was in his room, appellant
came in and wanted J.V. to kiss her in the same way he kissed his girlfriend. When he
refused to kiss appellant, she started rubbing his penis through his clothing. He moved her
hand and told her that if she did not leave him alone, he would tell his father. After hearing
this, appellant left the room. J.V. testified that "it happened again" several times which
made it a "fairly regular thing." J.V. also testified that appellant would masturbate him to
the "point of orgasm" and that a couple of months after the first incidence in his bedroom,
the "activity" advanced "to sex," meaning his "male sex organ" would go into appellant's
"female sex organ." J.V. and appellant first had sexual intercourse when he was fourteen
years old and living in Converse, Texas. When the family moved to Cibolo, Guadalupe
County, Texas, J.V. was fourteen years old, and he and appellant continued to have sex
"once or twice a week."

 Between July 2004 and May 2006, appellant touched J.V.'s genitals on at least five
occasions and engaged in sexual intercourse with him on at least six occasions in Cibolo,
Guadalupe County, Texas. About May 2005, appellant became pregnant with J.V.'s child.
Appellant gave birth to J.V.'s child on February 5, 2006, while J.V. was living in Cibolo. 
J.V. moved out of Cibolo and out of Guadalupe County, in July 2006.

 With regard to what happened in Cibolo, J.V. testified as follows:


 Prosecutor: Would all the--you said sexual contact continued there. 
What kind of sexual contact did you have in Cibolo?


 J.V.: The same that was in Converse, intimate or intercourse. 


 Prosecutor: Were there also times that--that she [appellant] would--to use
your terminology, engage in other types of contact, such as
masturbation or anything like that?


 J.V.: Yes.


 Prosecutor: Was this on a fairly regular basis?


 J.V.: Yes, it was.


 Prosecutor: How often could you say it happened?


 J.V.: Once or twice a week.


 . . . . 


 Prosecutor: Let me ask you this: The periods between July of 2004, and 
May of 2006, did [appellant] touch your genitals on at least two 
occasions, two--excuse me, three, four, five occasions?


 J.V.: Yes.


 Prosecutor: And during this time did you engage in sexual intercourse with 
[appellant] on at least six occasions?


 J.V.: Yes.


 Prosecutor: And these were all in Cibolo, Guadalupe County, Texas?


 J.V.: Yes.


 Prosecutor: And you are the stepchild of the [appellant], correct?


 J.V.: Correct.


 J.V. further testified that he had sexual intercourse with appellant "on as many as
six occasions," and it also occurred "while she was pregnant with J.V.'s child and after she
had the baby." J.V. stated that on at least six occasions, appellant fondled and touched
his penis "in a manner to arouse or gratify her sexual desire."

 On April 23, 2008, J.V. went to the Cibolo Police Department and spoke to a
detective. J.V. filled out an affidavit "withdrawing" the charges that were made against
appellant, trying to essentially "get this case dropped." J.V. stated that it was his father's
idea" that he go down to the Cibolo Police Department.

 On cross-examination, defense counsel asked J.V. about the first time he made his
"outcry" regarding what happened between him and appellant. He testified that the outcry
precipitated after a series of events at a rock concert called Ozzfest in Selma, Texas. J.V.
attended the rock concert with his sister, father, J.V.'s friend, who was a minor, and
appellant. J.V. stated that after appellant had her chest painted, (2) she approached him. 
When she grabbed J.V.'s wrists, he pushed her away. Afterwards, the police handcuffed
J.V. and put him in the back of a police car. An officer told J.V. that he was not under
arrest, but that he needed to detain him while he talked to J.V.'s father. J.V.'s friend went
over to the police car and talked to J.V., who told him that what J.V.'s father "suspected
had been going on between" him and appellant "was true." That night, J.V. stayed with his
biological mother. There, J.V. told officers what had happened between appellant and him. 
J.V. testified that he was purposefully vague because his mother, grandmother, and friend
were in his presence while he talked to the police. The officers took J.V. to the police
station that night "so they could do a one-on-one." J.V. stated he did not remember what
he told police because at that point, he "wasn't really trusting of anybody" and that he did
not "want to tell anybody the whole story."

 With respect to J.V.'s child, J.V. testified that appellant had told his father that "she
had been raped" and that the doctor informed the family that "she had amnesia." At that
moment, J.V. and J.V.'s father found out appellant was pregnant. When asked by defense
counsel if J.V.'s father ever found them "in an inappropriate position" in bed, J.V. testified
that "he [J.V.'s father] caught her sleeping with" him.

 William Carter, Ph.D., a psychologist specializing in psychological evaluations and
sexual dynamics, was asked by the prosecutor if a teenage boy in J.V.'s position "would
be confused about the fact that he's getting some pleasure from this?", Dr. Carter replied
that "the body does what the body's going to do. I think if he engages in sex, there's going
to be something about it that is physically pleasurable." Dr. Carter stated that when he
sees an abuse victim "displaying oppositional defiant disorder . . . and if there is a quasi
incestuous relationship going on," he would say that it "helps explain at least part of the
defiance." He said that when a child victim of sexual abuse signs an affidavit of non-prosecution, it "means that he wants the entire thing to go away" and "what he wants is
some closure." He stated that "most children" do not lie about being sexually assaulted
and that teenagers are not "good with calendar dates." When asked if there are families
"that express their affection and love through masturbating the teenage boys," Dr. Carter
stated that "would be very far out of the norm."

 On cross-examination, Dr. Carter testified that "there are times" when children lie
about being sexually assaulted. Defense counsel pointed out that Dr. Carter had never
met or counseled appellant or J.V. 

B. Defense Evidence

 Appellant's mother testified that she was "very much" involved in appellant's life and
will "assist her in every way" she possibly could. On cross-examination, the State asked
her if she was aware that appellant "had contact with J.V. when she wasn't supposed to
have it." Appellant's mother replied that she "had no knowledge that she [appellant] did."

II. Discussion


A. Sufficiency of the Evidence

 We first address issues five and six wherein appellant contends the evidence is
legally and factually insufficient to support her convictions. Specifically, she argues that
J.V.'s trial testimony was vague and inconsistent.

 1. Standard of Review

 "'In assessing the legal sufficiency of the evidence to support a criminal conviction,
we consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable doubt.'" 
Roberts v. State, 273 S.W.3d 322, 326 (Tex. Crim. App. 2008) (citing Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a factual-sufficiency review, the only question to
be answered is: "Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt?" Grotti v. State, 273 S.W.3d 273, 283
(Tex. Crim. App. 2008).

 Evidence can be deemed factually insufficient in two ways: (1) "the evidence
supporting the conviction is 'too weak' to support the fact finder's verdict"; or (2)
"considering conflicting evidence, the fact finder's verdict is 'against the great weight and
preponderance of the evidence.'" Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App.
2009) (quoting Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). The
court of criminal appeals has "set out three 'basic ground rules' implementing this
standard." Id. (quoting Watson, 204 S.W.3d at 414). First, the appellate court must
consider all of the evidence in a neutral light, as opposed to in a light most favorable to the
verdict. Id. Second, the appellate court "may only find the evidence factually insufficient
when necessary to 'prevent manifest injustice.'" Id. (quoting Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the
evidence is too weak to support the verdict or why the conflicting evidence greatly weighs
against the verdict. Id. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it
disagrees with it." Id.

 Our review of a legal and factual sufficiency challenge should be examined under
the principles of review for a hypothetically correct jury charge. Grotti, 273 S.W.3d at 280-81. "'Such a charge [is] one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily
restrict the State's theories of liability, and adequately describes the particular offense for
which the defendant was tried.'" Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App.
2009) (quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

 When "there is some testimony that is inconsistent about the times and locations
involved" in a crime, it is for the "jury to conclude beyond a reasonable doubt that offenses
occurred and that they occurred" in that certain county. See Dunn v. State, 125 S.W.3d
610, 616 (Tex. App.-Texarkana 2003, no pet.). "When an indictment alleges that a crime
occurred "on or about" a certain date, the State can rely upon an offense with a date other
than the one specifically alleged so long as the date is anterior to the presentment of the
indictment and within the statutory limitation period of the offense. . . ." Yzaguirre v. State,
957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (citing Sledge v. State, 953 S.W.2d 253 (Tex.
Crim. App. 1997)). It is the jury's role to judge a witness's credibility, including assessing
his motive to lie, and to choose to believe or disbelieve some or all of a witness's
testimony. See Lange v. State, 57 S.W.3d 458, 465 (Tex. App.-Amarillo, 2001, pet. ref'd.).

 2. Legal Sufficiency 

 a. Applicable Law-Sexual Assault of a Child


 In counts five through eight, the jury convicted appellant of four counts of sexual
assault of a child. Section 22.011 of the Texas Penal Code provides that a person
commits the offense of sexual assault of a child if the person intentionally or knowingly
"causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual
organ of another person, including the actor." Tex. Penal Code Ann. § 22.011(a)(2)(C). 
To prove count five, as set forth in the jury charge, the State was required to establish
beyond a reasonable doubt that appellant on or about September 15, 2005, in Guadalupe
County, Texas "intentionally or knowingly cause[d] the sexual organ of [J.V.] to contact or
penetrate the defendant's sexual organ, and the said [J.V.] was then and there a child
younger than 17 years of age and not the spouse of the defendant . . . ." Count six
contained the same language as count five, except that count six alleged that the offense
occurred on or about October 15, 2005. Count seven contained the same language as
counts five and six, except that count seven alleged that the offense occurred on or about
May 24, 2006. Count eight contained the same language as the other counts, except that
it alleged that the offense occurred on or about June 15, 2006.

 Appellant contends the evidence is legally insufficient to support her convictions
because J.V.'s testimony at trial "was vague or uncertain." J.V. testified that he lived in
Guadalupe County from August or September 2004 until July 2006. The evidence also
established that J.V. was younger than seventeen years old at the time of the offenses. 
Appellant was married to J.V.'s father at the time of the alleged conduct. J.V. stated that
between July 2004 and May 2006 appellant engaged in sexual intercourse with him, which
meant placing J.V.'s penis inside appellant's vagina, on at least six occasions in Cibolo,
Guadalupe County, Texas. A child victim's description of what occurred need not be
precise, and wide latitude is given to the testimony of a child victim in a sexual abuse case. 
Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Moreover, a defendant's
intent can be inferred from the acts, words, and conduct of the accused. See Hernandez
v. State, 819 S.W. 2d 806, 810 (Tex. Crim. App. 1991); DeLeon v. State, 77 S.W.3d 300,
312 (Tex. App.-Austin 2001, pet. ref'd.). Here, J.V. provided direct testimony concerning
the occasions, which occurred "once or twice a week," where appellant and J.V. engaged
in sexual intercourse. Accordingly, the jury could have reasonably inferred that appellant
knowingly or intentionally caused the sexual organ of J.V. to contact or penetrate
appellant's sexual organ, therefore establishing each count of sexual assault of a child. 
See Tex. Penal Code Ann. § 22.011(a)(2)(C). 

 b. Applicable Law-Indecency With a Child

 In counts nine through eleven, the jury convicted appellant of three counts of
indecency with a child. Section 21.11 of the Texas Penal Code provides that a person
commits the offense of indecency with a child "if, with a child younger than 17 years and
not the person's spouse, . . . the person: (1) engages in sexual contact with the child or
causes the child to engage in sexual contact . . . ." Id. § 21.11(a)(1). Sexual contact
includes the following acts "if committed with the intent to arouse or gratify the sexual
desire of any person:" "(1) any touching by a person, including touching through clothing,
of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of
the body of a child, including touching through clothing, with the anus, breast, or any part
of the genitals of a person." Id. § 21.11(c). To prove count nine, as set forth in the charge,
the State was required to establish beyond a reasonable doubt that appellant on or about
May 23, 2006, in Guadalupe County, Texas "intentionally or knowingly engage[d] in sexual
contact with [J.V.] by touching any part of the genitals of [J.V.], and the said [J.V.] was a
child younger that [sic] 17 years of age and not the spouse of the defendant . . . ." Count
ten contained the same language as count nine, except that it alleged that the offense
occurred on or about May 25, 2006. Count eleven contained the same language as the
other counts, except that it alleged that the offense occurred on or about May 27, 2006.

 Appellant contends the evidence is legally insufficient to support her convictions
because J.V.'s testimony at trial was "generic and non-specific." Here, J.V. clearly testified
that on at least six occasions, appellant fondled and touched his penis "in a manner to
arouse or gratify her sexual desire." At the time appellant "fondle[d]" J.V.'s penis, J.V. was
under the age of seventeen and not married to appellant. It is within the jury's exclusive
province to judge the credibility of a witness and to assign the weight to be given to his
testimony. See Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

 c. Applicable Law-Prohibited Sexual Conduct


 In count twelve, the jury convicted appellant of prohibited sexual conduct. Section
25.02 of the Texas Penal Code provides that "[a] person commits an offense [of prohibited
sexual conduct] if the person engages in sexual intercourse or deviate sexual intercourse
with another person the actor knows to be, without regard to legitimacy: . . . the actor's
current or former stepchild or stepparent." Tex. Penal Code Ann. § 25.02(a)(2) (Vernon
Supp. 2009). "'Sexual intercourse' means any penetration of the female sex organ by the
male sex organ." Id. § 25.02(b)(2). To prove count twelve as set forth in the charge, the
State was required to establish beyond a reasonable doubt that appellant on or about May
24, 2006, in Guadalupe County, Texas "intentionally or knowingly engage[d] in sexual
intercourse with [J.V.], a person the defendant knew to be, without regard to legitimacy, the
defendant's stepchild . . . ."

 Again, appellant contends the evidence is legally insufficient to support her
conviction because J.V.'s testimony lacks specificity. While on direct-examination, J.V.
testified that he and appellant had engaged in sexual intercourse as late as May 2006 in
Guadalupe County. In May 2006, J.V. was under seventeen years of age, not married to
appellant, and he was appellant's stepchild.

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational jury could have found beyond a reasonable doubt the essential elements of sexual
assault of a child, indecency with a child by contact, and prohibited sexual conduct. 

 3. Factual Sufficiency

 For each of the counts, appellant contends the evidence before the trial court was
factually insufficient because J.V.'s trial testimony was vague, his dates and locations
where the alleged conduct took place were inconsistent, and his statements that were
videotaped and made to police were either untruthful or conflicting.

 In July 2006, J.V. told the police about the nature of his relationship with appellant.
J.V.'s testimony was not so vague that the jury would have had trouble deciphering when,
where, or how the conduct took place. It is for the jury to judge the credibility of the
witness. See Cain, 958 S.W.2d at 408-409. J.V. testified that all of the alleged incidents
with appellant occurred between July 2004 and May 2006. Here, appellant claims that J.V.
"mixed up his dates," and therefore the counts are not consistent with the actual dates of
occurrence. Moreover, appellant contends J.V. did not "keep a diary" of what was
occurring between him and appellant. However, J.V.'s testimony and the counts in the
indictment allege that the dates are "on or about" the dates of the incidents. The State may
rely upon an offense with a date other than the one specifically alleged. See Yzaguirre,
957 S.W.2d at 39; Garcia v. State, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998)
(explaining that time is not a material element of an offense, and, in some cases, it is
impossible for the State to know precisely, or even approximately, when the charged
offense occurred). Further, J.V. provided the events that led to the first time he and
appellant had intercourse in chronological order. J.V. stated that, after he and appellant
first had sexual intercourse, the two would have intercourse "once or twice a week." 
"Whether the sequence of events [as testified to by a child] was alleged to have occurred,
one, ten, fifty or one hundred times does not by itself impact the believability of the child's
story." Dixon v. State, 201 S.W.3d 731, 735 (Tex. Crim. App. 2006). Considering all of the
evidence neutrally, we hold that the evidence supporting the verdict is not so weak as to
make the findings of guilt clearly wrong or manifestly unjust, nor is the verdict against the
great weight and preponderance of the evidence. We hold that the evidence is both legally
and factually sufficient to support the convictions. Issues five and six are overruled. 

B. Speedy Trial

 In issue four, appellant complains she was denied the right to a speedy trial. See
U.S. Const. amend. VI; Tex. Const. art. I, § 10. (3)

 1. Standard of Review

 When reviewing the trial court's ruling on a speedy-trial motion, we use a bifurcated
standard of review. Cantu v. State, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). We
apply "an abuse-of-discretion standard for factual components, and a de novo standard for
the legal components." Id. Those standards are well established, and a detailed recitation
of them need not be repeated here. It is sufficient to note that the trial court's ruling will be
affirmed only if it is supported by the record and is correct under the applicable law. Shaw
v. State, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). When, as here, the trial court does
not make written findings of fact and conclusions of law, findings supported by evidence
will be implied in favor of the trial court's ruling, and we must defer to such findings. See
State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

 2. Applicable Law

 The Sixth Amendment to the United States Constitution guarantees the accused in
a criminal case the right to a speedy trial. Cantu, 253 S.W.3d at 280. The right to a
speedy trial:

 attaches once a person becomes an "accused," [i.e.,] once he or she is arrested or
charged. Supreme Court precedent requires [us] to analyze federal constitutional
speedy-trial claims 'on an ad hoc basis' by first weighing and then balancing the four
Barker v. Wingo factors: (1) length of the delay[;] (2) reason for the delay[;] (3)
assertion of the right[;] and (4) prejudice[ (4)] to the accused. While the State has the
burden of justifying the length of the delay, the [accused] bears the burden of
proving the assertion of the right and showing prejudice. The [accused's] burden
of proof on the latter two [Barker] factors 'varies inversely' with the State's degree
of culpability for the delay.


Id. (citing Robinson v. Whitley, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the
State's bad faith or official negligence and the longer its actions delay a trial, the less [an
accused] must show actual prejudice or prove diligence in asserting [the] right to a speedy
trial." Id. at 280-81.

 "Once the Barker test is triggered, courts must analyze the speedy-trial claim by first
weighing the strength of each of the Barker factors and then balancing their relative
weights in light of 'the conduct of both the prosecution and the defendant.'" Cantu, 253
S.W.3d at 281 (quoting Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002))
(quoting Barker v. Wingo, 407 U.S. 514, 530 (1972)). No single "factor is 'either a
necessary or sufficient condition to the finding of a deprivation of the'" speedy-trial right;
rather, "the four factors are related and must be considered together along with any other
relevant circumstances." Id. Because no factor has "'talismanic'" qualities, we must
engage "'in a difficult and sensitive balancing process'" in each case. Id. (quoting Barker,
407 U.S. at 533).

 "Upon a finding that an accused's Sixth Amendment speedy-trial right was actually
violated, . . . dismissal of the charging instrument with prejudice is mandated." Id. 
"Because dismissal of the charges is a radical remedy, a wooden application of the Barker
factors would infringe upon 'the societal interest in trying people accused of crime, rather
than granting them immunization because of legal error.'" Id. (quoting United States v.
Ewell, 383 U.S. 116, 121 (1966)). Thus, we "must apply the Barker balancing test with
common sense and sensitivity to ensure that charges are dismissed only when the
evidence shows that [an accused's] actual and asserted interest in a speedy trial has been
infringed." Id.; see Barker, 407 U.S. at 534-35 (finding a five-year delay did not violate the
speedy-trial requirement when the record showed the accused did not want a speedy trial). 
"The constitutional right is that of a speedy trial, not dismissal of the charges." Id.

 3. Analysis

 a. First Barker Factor: Length of the Delay


 The first Barker factor is measured from the time the accused is arrested or formally
charged until the time the accused asserted the speedy-trial right. United States v. Marion,
404 U.S. 307, 321 (1971); see Cantu, 253 S.W.3d at 280.



 1. Time of Arrest

 Appellant was arrested on September 12, 2006 for the initial charge. She was
released on October 4, 2006. In addition, she was incarcerated from July 11, 2008 until
July 14, 2008, and from September 22, 2008 until September 23, 2008. Appellant's time
in jail totaled twenty-nine days.

 2. Time of Formal Charges

 On September 12, 2006, appellant was formally charged but waived indictment. 
Appellant was not arrested or formally accused with any other charge until May 10, 2007,
at which time she was charged with the original charge and three additional charges. On
April 23, 2008, approximately twenty-nine months later, appellant first asserted her right
to a speedy trial. (5) On July 9, 2008, all of the charges against appellant were dropped
because the State's indictment was "faulty." Appellant was reindicted on July 10, 2008, for
the same allegation contained in her previous indictment, plus eight additional charges. 

 3. Analysis

 "The Barker test is triggered by a delay which is unreasonable enough to be
'presumptively prejudicial.'" Cantu, 253 S.W.3d at 281 (citing Doggett v. United States,
505 U.S. 647, 652 n.1 (1992)). No set time element exists that triggers the analysis, but
the court of criminal appeals has held that a four-month delay is not sufficient while a
seventeen-month delay is. Id. In Doggett, the Supreme Court noted that courts "have
generally found post-accusation delay 'presumptively prejudicial' at least as it approaches
one year." 505 U.S. at 652 n.1.


 In this case, approximately twenty-nine months elapsed from the time appellant was
indicted until the time she asserted her speedy-trial right. Therefore, we conclude the
delay was presumptively prejudicial, thereby resolving the first Barker factor in appellant's
favor and warranting analysis of the three remaining Barker factors. 

 b. Second Barker Factor: Reason for the Delay


 When the delay is determined to be presumptively prejudicial, the burden shifts to
the State to justify the delay. Turner v. State, 545 S.W.2d 133, 137-38 (Tex. Crim. App.
1976). Under Barker, "different weights" should be attributed to this factor depending upon
the different reasons for the delay. 407 U.S. at 531; Munoz, 991 S.W.2d at 822. A
"'deliberate attempt to delay the trial'" weighs heavily against the State, whereas a "'more
neutral reason, such as negligence or overcrowded courts, should be weighed'" less
heavily against the State. Munoz, 922 S.W.2d at 822 (quoting Barker, 407 U.S. at 531). 
"A valid reason for the delay should not be weighed against the State." Id.

 Here, the record shows that both the State and appellant were both responsible for
delay. The State admitted that it was responsible for the delay: (1) when appellant was
arrested on September 12, 2006 until October 4, 2006, when the case was filed by
information to which appellant pleaded guilty and she waived indictment; (2) when the
presentence investigation report (PSI) was delayed between December 18, 2006 until
February 7, 2007; and (3) when the first indictment was dismissed, from July 9, 2008 to
August 19, 2008, when appellant was re-indicted and the case was placed back on the
docket for arraignment. (6)

 Appellant's delays included: (1) from February 7, 2007 until April 11, 2007, when
she requested a continuance in order to obtain new counsel; (2) from April 11, 2007
through December 17, 2007, when appellant withdrew her guilty plea requiring the State
to present an indictment to a grand jury, which necessitated a new arraignment date and
a trial docket setting; (3) when she requested a continuance because she was not
prepared to go to trial until the results of a paternity test were obtained; (4) a request for
a forensic psychologist, which demonstrated that she was not ready for trial; and (5) from
August 19, 2008 until October 10, 2008, when appellant requested a continuance because
her counsel was unavailable, in which she requested that the court continue the case "until
some future date."

 In addition, the State and appellant had mutual delays. The mutual delays included
six stipulated written resets, which were signed by the State, appellant, and appellant's
counsel. (7) 

 The State's effort to cure the defective indictment and delay in preparation of the
PSI weighed against the State. However, appellant's delays, which included requesting
a continuance in order to obtain new counsel, withdrawing her guilty plea, and requesting
a continuance so that she could obtain paternity testing, a forensic psychologist, and an
investigator, weigh against appellant. Appellant's continuances demonstrate that she, like
the State, at times was not prepared to go to trial and thus contributed to the overall delay
of the case. 

 c. Third Barker Factor: Assertion of the Speedy-Trial Right

 Appellant first asserted her right to a speedy trial on April 23, 2008. (8)
 The accused
bears the responsibility to assert (9)
 his or her right to a speedy trial. Cantu, 253 S.W.3d at
282. "'The more serious the deprivation, the more likely a defendant is to complain.'" Id.
at 283 (quoting Barker, 407 U.S. at 531). An accused's assertion of his or her speedy-trial
right (or the failure to assert the right) "is entitled to strong evidentiary weight in determining
whether the [accused] is being deprived of the right." Id.; Harris v. State, 827 S.W.2d 949,
957 (Tex. Crim. App. 1992) ("[A]ppellant's lack of a timely demand for a speedy trial
indicates strongly that he did not really want a speedy trial."); see Barker, 407 U.S. at 536
("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a
defendant was denied this constitutional right on a record that strongly indicates, as does
this one, that the defendant did not want a speedy trial."). As the Fifth Circuit stated in
United States v. Palmer, "the point at which the defendant asserts his right is important
because it may reflect the seriousness of the personal prejudice he is suffering." 537 F.2d
1287, 1288 (5th Cir. 1976). (10) We conclude this factor weighs against appellant.

 d. The Fourth Barker Factor: Prejudice

 "Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth
Barker factor examines whether and to what extent the delay had prejudiced the
defendant." Cantu, 253 S.W.3d at 285 (quoting Doggett, 505 U.S. at 656). In analyzing
the prejudice to the accused, we must do so in light of the accused's "interests that the
speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration[;]
(2) to minimize the accused's anxiety and concern[;] and (3) to limit the possibility that the
accused's defense will be impaired." Id. (citing Dragoo v. State, 96 S.W.3d 308, 316 (Tex.
Crim. App. 2003)). Of these three types of prejudice, "the last is the most serious 'because
the inability of a defendant adequately to prepare his case skews the fairness of the entire
system.'" Id. (quoting Dragoo, 96 S.W.3d at 316). Although "a showing of 'actual
prejudice' is not required in Texas," the accused has the burden to make some showing
of prejudice that was caused by the delay of the trial. Harris v. State, 489 S.W.2d 303, 308
(Tex. Crim. App. 1973) (quoting Courtney v. State, 472 S.W.2d 151, 154 (Tex. Crim. App.
1971)).

 At the motion to dismiss hearing, appellant and her counsel testified as to the
"prejudice she suffered" as a result of the delays. In her appellate brief, appellant further
argues that, as a result of such delays, she suffered prejudice for the following reasons: 
(1) she was "ordered not to be in the presence of [her husband's] daughter," which required
her to live outside the family home; (2) she was ordered not to be around J.V. or any other
minor children, which consequently prevented her from seeing her husband or children; (3)
her hours at work were reduced, she was suspended, and she was unable to find other
employment; and (4) the complaining witness, J.V., had "difficulty recalling the events that
happened two or more years before the time of trial." Furthermore, appellant was
incarcerated for twenty-nine days over the course of this case, the final two days of which
were a result of a violation of her bond when she tested positive for cocaine.

 Appellant has made no showing that she suffered anxiety or concern that resulted
from this case, beyond that associated with any criminal charge or investigation.
"[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice
under the Barker test, especially when it is no greater anxiety or concern beyond the level
normally associated with a criminal charge or investigation." Cantu, 253 S.W.3d at 286.
The record shows that the court order prohibiting contact with her husband's daughter was
the result of a custody case and not the pending criminal case against her. Further, the
court order prohibiting her from being in contact with minor children lasted for a period of
two or three months. This was an appropriate amount of time because she had been
charged with sexual assault and indecency with a minor child. Regarding appellant's
employment status, the record reflects that "a news story that was aired in San Antonio"
involving appellant's criminal case resulted in appellant's temporary suspension without
pay. (11) However, this is not prejudice beyond that normally associated with criminal charges
or investigations. See id. In addition, appellant failed to show how her defense was
impaired, although she does assert that J.V.'s memory was diminished because of the
delay. J.V., however, was a witness for the prosecution, and any impairment or "difficulty
recalling the events" would likely benefit rather than prejudice her defense. See Barker,
407 U.S. at 534. ("the inability of a defendant to adequately prepare his case skews the
fairness of the entire system . . . . There is also prejudice if defense witnesses are unable
to recall accurately events of the distant past.") (emphasis added). Lastly, appellant's total
time of incarceration over the twenty-nine month period was twenty-nine days and is not
considered "oppressive pretrial incarceration." See Palacios v. State, 225 S.W.3d at 169. 
Furthermore, her final two days were a result of her use of cocaine. We conclude this
factor weighs against appellant. 

 3. Balancing the Barker Factors

 The record in this case supports the trial court's denial of appellant's speedy-trial
motion. The only evidence appellant proffered that would weigh in her favor would be the
State's delays due to its defective indictment. However, appellant had delays as well when
she requested new counsel, paternity testing, and other experts. In addition, appellant
failed to show any oppressive pretrial incarceration or any substantial personal or defense
prejudice resulting from the delay, demonstrating that the trial court did not err in denying
appellant's motion for a speedy trial. We hold appellant was not denied her right to a
speedy trial. Issue four is overruled.

C. Jurisdiction

 In issues one, two, and three, appellant contends this Court lacks jurisdiction over
this appeal. First, she argues that chapter 73 of the Texas Government Code violates the
Equal Protection Clause of the United States Constitution because it does not give proper
effect to the voters of Texas who elect the justices of the intermediate appellate courts. 
See U.S. Const. amend. XIV. Tex. Gov't Code Ann. § 73.001 (Vernon 2005). Second,
appellant argues that this Court lacks jurisdiction over this appeal because the Texas
Supreme Court's order transferring her appeal to this Court is unconstitutional under the
Texas Constitution due to a conflict between the Texas Constitution and chapter 73 of the
Texas Government Code. Third, she claims this Court lacks jurisdiction over this appeal
because the order of transfer is a void exercise of legislative authority over the judiciary in
violation of the Separation of Powers provision contained in article II, section 1 of the
Texas Constitution. See Tex. Const. art. II, § 1. She requests that we transfer this appeal
back to the Fourth Court of Appeals.

 The Texas Supreme Court may transfer cases to this Court pursuant to section
73.001 of the Texas Government Code "at any time that, in the opinion of the supreme
court, there is good cause for transfer." Tex. Gov't Code Ann. § 73.001; see also Arocha
v. State, No. 08-07-00108-CR 2009 WL 1883733, at *4 (Tex. App.-El Paso June 30, 2009)
(mem. op., not designated for publication) (pet. dism'd improvidently granted). (13) Section
73.002 provides that the transferee court of appeals "has jurisdiction of the case without
regard to the district in which the case originally was tried and to which it is returnable on
appeal." Tex. Gov't Code Ann. § 73.002. Appellant argues her constitutional issues as
challenges to our jurisdiction. Generally, a party is not required to preserve a challenge to
the court of appeals' jurisdiction. See Arocha, 2009 WL 1883733, at *5. However, the
Eighth Court of Appeals in Arocha concluded that constitutional jurisdictional challenges
such as this must be preserved, because "[e]ven if Section 73.001 is unconstitutional as
applied to [Arocha], we would not be divested of jurisdiction" under section 73.002. Id. 

 The proper procedure for obtaining a transfer between appellate courts is by motion
to the Texas Supreme Court. See Tex. Gov't Code Ann. § 73.001. The Texas Supreme
Court has established the following procedure for a transfer:

 The party requesting transfer should file a copy of the motion to
transfer in each of the two courts of appeals, asking that, when the motion
is forwarded to the Supreme Court, each court of appeals advise the
Supreme Court in writing whether it has any objection to the proposed
transfer. Any briefs in favor of the proposed transfer should also be filed in
each court of appeals and forwarded with the transfer motion. We will then
have the motion, the briefs, and the comments of the two courts of appeals
in determining whether to grant the motion to transfer.

 

Id. (citing Miles v. Ford Motor Co., 914 S.W.2d 135, 137 n.2 (Tex. 1995)). Failure to follow
the established procedure results in failure to preserve complaints about the transfer of an
appeal. See id. 

 The State contends that appellant failed to utilize the procedure for seeking a
transfer of her appeal. Appellant's brief mentions a document that she urges was filed with
the Texas Supreme Court, entitled "Special Appearance and Objection to Case Transfer
of Case From Courts of Appeals," yet no copy of this document was included in the record. 
Regardless, from the title of the document we cannot discern if it serves in any way to
comport with proper procedure for requesting a transfer. If appellant had followed the
procedure and her motion had been granted, her complaints about the constitutionality of
section 73.001 would be remedied. Id. Alternatively, if her motion were denied, this Court
would be in a position to address the constitutional issues. Id. We conclude appellant did
not follow the proper procedure requesting transfer, and, therefore, her complaint is not
preserved. We overrule appellant's first, second, and third issues.

III. Conclusion


 We affirm the judgment of the trial court. 




 

 ROSE VELA 

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the

19th day of August, 2010.
1. This appeal was transferred to this Court from the Fourth Court of Appeals by order of the Texas
Supreme Court. See Tex. Gov't Code Ann. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate
courts); Tex. Gov't Code Ann. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer
cases from one court of appeals to another at any time that there is "good cause" for the transfer).
2. J.V. explained that at Ozzfest, some women "take off their bras and shirts, and they get their chest
painted."
3. Article I, section 10 of the Texas Constitution also guarantees the accused in all criminal cases the
right to a speedy and public trial. See Tex. Const. art. I, § 10. This right exists independently of the federal
guarantee, but the court of criminal appeals analyzes claims of a denial of the state speedy-trial right under
the same four Barker factors. Cantu v. State, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008); see Barker
v. Wingo, 407 U.S. 514, 530 (1972). 
4. See Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that "if an accused
made a prima facie showing of prejudice, the State 'must carry the obligation of proving that the accused
suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay'").
5. The trial court denied appellant's motion to dismiss for lack of speedy trial on January 14, 2009. 
6. The State, alleging that it acted in good faith, dismissed the original charges against appellant
because the indictment was "faulty." The indictment contained a charge for sexual assault where it alleged
that appellant "did then and there intentionally or knowingly cause the contact with or penetration of the sexual
organ of [J.V.] a child who was then and there younger than 17 years of age and not the spouse of the
defendant, by defendant's sexual organ." The language contained in the charge was considered confusing
and defective because appellant, a female, cannot physically use her sexual organ to penetrate the sexual
organ of J.V., a male
. 
7. The dates included: October 4, 2006 through December 18, 2006; December 17, 2006 through
March 12, 2008; March 12, 2008 through June 17, 2008; June 17, 2008 through July 19, 2008; October 10,
2008 through October 29, 2008; and October 29, 2008 through January 14, 2009.
8. Appellant's assertion of her right to a speedy trial occurred on April 23, 2008. On August 15, 2008,
appellant next asserted her right in a "motion to dismiss with prejudice for lack of speedy trial." Appellant did
not request a hearing on the this motion until October 22, 2008, at which time she withdrew the motion. On
January 14, 2009, appellant finally presented the motion to the trial court.

9. Although a person cannot file a speedy-trial motion until formal charges are made, the person can
assert his or her speedy-trial right in other ways. Cantu, 253 S.W.3d at 283. The United States Supreme
Court has held that "invocation of the speedy trial provision . . . need not await indictment, information, or other
formal charge." Dillingham v. United States, 423 U.S. 64, 65 (1975).

10. In Palmer, the Fifth Circuit noted that because the defendant "first asserted his right thirty months
after his arrest, which was one month after he first received notification of his indictment, and he complained
at that time only of the 22-month pre-indictment delay," his "silence during the entire pre-indictment period
works against him because it suggests that any hardships he suffered were either minimal or caused by other
factors." United States v. Palmer, 537 F.2d 1287, 1288 (5th Cir. 1976).
11. One of the factual "major evils protected against by the speedy trial guarantee" stated in United
States v. Marion (12)
12. 404 U.S. 307, 320 (1971) ("]T]he major evils protected against by the speedy trial
guarantee exist quite apart from actual or possible prejudice to an accused's defense. .
. . Arrest is a public act that may seriously interfere with the defendant's liberty,
whether he is free on bail or not, and that may disrupt his employment, drain his
financial resources, curtail his associations, subject him to public obloquy, and create
anxiety in him, his family and his friends."). 
 
13. The Court of Criminal Appeals granted discretionary review to determine whether the Eighth Court
of Appeals erred in rejecting Arocha's jurisdictional arguments on the basis of a procedural default, however,
upon reviewing the record, it concluded that granting Arocha's petition was improvident. Arocha v. State, No.
PD-1189-90, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010).