PD-0971-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/4/2015 1:11:26 PM
Accepted 9/8/2015 11:12:43 AM
ABEL ACOSTA
CLERK

## No. PD-0971-15

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

_____

KEN SCRIPA,

Petitioner

vs.

THE STATE OF TEXAS,

Respondent

---

## PETITION FOR DISCRETIONARY REVIEW

---

GERALD  FRY

Texas Bar No. 07493800

801 Congress St., Suite 350

Houston, Texas 77002

Tel. (713) 222-0860

Fax (713) 224-3111


ATTORNEY FOR PETITIONER,

KEN SCRIPA

PETITIONER DOES NOT REQUEST ORAL ARGUMENT

**Petitioner: Ken Scripa**

      **Trial Counsel: Judy Mingledorf**
              **430 Hwy 6 South, Suite 215**
              **Houston, Texas 77079**

      **Appellate Counsel : Gerald Fry**
               **801 Congress St., Suite 350**
               **Houston, Texas 77002**

**Respondent: State of Texas**

      **Trial Counsel: Collen Gaido**
               **1201 Franklin Suite 600**
               **Houston, Texas 77002**

      **Appellate Counsel: Alan Curry**
               **1201 Franklin, 6th Floor**
               **Houston, Texas 77002**

      **State Prosecuting Attorney: Lisa McMinn**
               **P.O. Box 12405**
               **Austin, TX 78711**

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL …………………………………………………..ii

TABLE OF CONTENTS ……………………………………………..……………iii

INDEX OF AUTHORITIES……………………………………..…………………...…iv

STATEMENT OF THE CASE………………………………………..………1

STATEMENT ON ORAL ARGUMENT…………………………..………....i

ISSUES PRESENTED…………………………………….…………….....1

STATEMENT OF FACTS………………………………………………....1-2

SUMMARY OF THE ARGUMENT…………………….……………………....2

ARGUMENT……………………………………………….…….……2-4

**Issue 1:** Did The Court of Appeals err in ruling that the trial court did not abuse it's discretion in admitting an extraneous offense against the Petitioner during the guilt-innocence stage of the trial in violation of *Texas Rules of Evidence Section 404(b), 403* …………………………………………………...1

PRAYER………………………………………….………..………4

CERTIFICATE OF SERVICE……………………………………….…....………4

CERTIFICATE OF COMPLIANCE …………………………………………4

APPENDIX ……………………………………………………...5

# INDEX OF AUTHORITIES

## <u>CASES</u>

*Caldwell v. State, 477 S.W.2d 877, (Tex. Crim. App. 1979)*……………………………..3

*Deleon v. State, 77 S.W.3d 300 (Tex. App. Austin 1st Dist, 2001)*……………………….3

*Pavlacka v. State, 892 S.W.2d 897, (Tex. Crim. App. 1994)*……………………….……3

*Webb v. State, 36 S.W.3d, (Tex. App. Houston 14th Dist. 2000)*……………….…………3

*Lewis v. State, 529 S.W.2d 533, (Tex. Crim. App. 1975)* ……...………………………3

*Turner v. State, 754 S.W.2d 668, (Tex. Crim. App. 1988)*……………………….………4

## <u>STATUES</u>

*Texas Rules of Evidence Section 404(b)*……………………………………………….3

*Texas Rules of Evidence Section 403*…………………………………………………..3

## STATEMENT OF THE CASE

Petitioner was charged by an Indictment filed October 24, 2012 with the Sexual Assault of an Adult, Karen Hatchett, by placing his fingers in the sexual organ of the Karen Hatchett, (CR-8). On May 19, 2014 the Petitioner plead not guilty to the Indictment and a jury was empaneled, (CR-321-326). The Jury Trial was from May 19, 2014 until May 22, 2014. On May 21, 2014 the jury returned a guilty verdict, (CR-336). On May 22, 2014 the jury sentenced the Petitioner to 10 years in prison and a $10,000 fine, (CR-348). Notice of Appeal was filed on May 22, 2014, (CR-355). Opinion issued on July 2, 2015 by the First court of appeals, (See Appendix). PDR due September 2, 2015.

## ISSUE PRESENTED FOR REVIEW

**Issue 1:** The Court of Appeals erred in ruling that the trial court did not abuse it's discretion in admitting an extraneous offense against the Petitioner during the guilt-innocence stage of the trial in violation of *Texas Rules of Evidence Section 404(b), 403*

## STATEMENT OF FACTS

Petitioner is the owner of a massage business, Scripa Wellness Center. Complaint stated that on August 6, 2014 she went there for a massage. Complaint testified that the Appellant was giving her a massage and asked her to lay on her back and then shoved his fingers into her vagina, (3 RR 9-127). After the Petitioner presented testimony the State presented an extraneous offense of Jennifer Peterson being sexually assaulted by Petitioner during her massage on March 12, 2011.

1

She testified that Petitioner rubbed his penis, that was inside his shorts, against her hand, (4 RR 87) and then also touched her vagina, (4 RR 90) during her massage.

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion and committed reversible error by allowing the State to present in their rebuttal testimony the extraneous offense of the alleged sexual assault of Jennifer Peterson.

## ARGUMENT

**Issue 1:** The Court of Appeals erred in ruling that the trial court did not abuse it's discretion in admitting an extraneous offense against the Petitioner during the guilt-innocence stage of the trial in violation of *Texas Rules of Evidence Section 404(b), 403*

## ARGUMENT AND AUTHORITIES

The standard of review is whether the trial court abused its discretion by allowing the extraneous offense evidence in over Petitioner's objections. The Petitioner did not testify at the guilt-innocence stage of the jury trial. The State in rebuttal after the Defense rested brought Jennifer Peterson in to testify about an extraneous sexual offense that the Petitioner committed against her, (4 RR 75-94). Petitioner filed a Motion in Limine, ( 1 CR 282). The court granted this motion. The Court granted the State's motion to allow the extraneous offense to come into evidence, (4 RR 59). The State claims that they are allowed to bring the extraneous offense in to rebut the defensive theory that the complaint fabricated her testimony, (RR 235-240). *Texas Rules of Evidence 404(b)* states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character

2

of a person in order to show action in conformity therewith". Petitioner cross-examined the Complaint but the exercise of the right of cross-examination will not, in and of itself, open the door to the admission of extraneous offenses, *Caldwell v. State, 477 S.W.2d 877, (Tex. Crim. App. 1979).* The cross-examination must effectively contest a fact that testimony was offered to prove, *Deleon v. State, 77 S.W.3d 300 (Tex. App. Austin 1st Dist., 2001).* The cross-examination of the Complaint was not vigorous and no defensive theory was raised by this cross-examination. If the complainant is not vigorously cross-examined concerning fabricated testimony and the Petitioner didn't testify then an extraneous offense is not admissible on this ground, *Pavlacka v. State, 892 S.W.2d 897, (Tex. Crim. App. 1994), see also Lewis v. State, 529 S.W.2d 533, (Tex. Crim. App. 1975).* The Complaint was not cross-examined at all concerning fabrication, (3 RR 48-77, 83-88). *Webb v. State, 36 S.W.3d, (Tex. App. Houston 14th Dist.)* held that testimony about an extraneous offense involving another person does not rehabilitate the complainant. The only purpose in admitting the extraneous offense was to show that Petitioner commits sexual assaults in general and therefore probably committed the sexual assault he is on trial for.

Even if this court determines that the evidence is relevant and not in violation of *Texas Rules of Evidence 404(b),* then the court must do a balancing act under *Texas Rules of Evidence 403. Texas Rules of Evidence 403* states , although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *Deleon v. State, 77 S.W.3d 300 (Tex. App. Austin 1st Dist., 2001), see also*

3

*Turner v. State, 754 S.W.2d 668, (Tex. Crim. App. 1988).* Sexual extraneous offenses in a sexual assault trial tend to allow the jury to convict the Petitioner on the basis that he is a sexual predator. The probative value of the extraneous offense is very small and the danger of unfair prejudice is very high.

## PRAYER FOR RELIEF

For the above reasons, your Petitioner respectfully requests that this Court order the case reversed and render a judgment of acquittal. In the alternative, Petitioner prays that the case be remanded to the trial court for a new trial.

Respectfully submitted,

**/S/ Gerald Fry**
Gerald Fry
Texas Bar Number 07493800
801 Congress, Suite 350
Houston, TX 77002
(713) 222-0860; (713) 224-3111 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Petitioner's PDR Brief was emailed to the Alan Curry, Harris County District Attorney's Appellate Section and emailed to the State Prosecuting Attorney, Lisa McMinn, on this the 4th day of September 2015.

**/S/ Gerald Fry**
Gerald Fry

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Petition conforms to the requirements of TRAP 9, and consists of 1,291 words per TRAP 9.4(i)(3).

**/S/ Gerald Fry**
Gerald Fry

# APPENDIX



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00477-CR

_____

**KEN SCRIPA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1365724**

## MEMORANDUM OPINION

A jury found Appellant guilty of the offense of sexual assault.[1] It assessed

Appellant's punishment at 10 years in prison and a $10,000 fine. On appeal,

---

[1] *See* TEX. PEN. CODE ANN. § 22.011(a)(1) (Vernon 2011).

Appellant raises one issue, asserting that the trial court abused its discretion in admitting extraneous-offense evidence during the guilt-innocence stage of trial.

We affirm.

## Background

The complainant decided to treat her close friend, H.G., to a massage to celebrate H.G.'s birthday. The complainant found an on-line coupon to Scripa Massage and purchased a massage for herself and for H.G. The complainant scheduled the massages for August 6, 2011.

Two massage therapists worked at Scripa Massage, Appellant and a female massage therapist, P. Geraldo. After arriving for their appointment, the complainant and H.G. were directed to separate areas to have their massages. Appellant was the complainant's massage therapist, and Geraldo was H.G.'s therapist.

Before her massage, the complainant disrobed completely and lay down on the massage table. Her body was completely covered by a sheet. Appellant began the massage with the complainant lying on her stomach. He then asked her to turn onto her back. Appellant continued the massage. He first massaged the complainant's left leg then moved to her right leg. Appellant began by massaging the complainant's right foot and then moved up her leg massaging it. As he massaged the complainant's right thigh, Appellant suddenly threw the sheet off the

2

complainant's body and stuck his fingers inside her vagina. The complainant sat up and said, "Oh, hell no you don't." She would later testify that she did not shout but said this loud enough for Appellant to hear her. As she sat up, she saw that Appellant's erect penis was hanging out of the top of his gym shorts. She also saw that Appellant had his right knee on the massage table and appeared positioned to climb on top of her.

Because of the complainant's reaction, Appellant removed his fingers, looked at the complainant, walked to the door, and said, "I'm sorry that we didn't get to finish your massage, but if you'll get dressed and come out, I'll schedule you another appointment for free." The complainant got dressed and left. As she walked out, she noticed a man and a woman waiting in the lobby. The complainant went outside and waited for about 15 minutes for H.G. to come out of the building.

H.G. knew the complainant was upset when she saw her waiting outside. On the drive home, the complainant told H.G. what Appellant had done to her. The complainant reported what had happened to the Houston Police Department and to the Texas Department of State Health Services (TDSHS), licensing agency for massage therapists. After the TDSHS began its investigation, Appellant voluntarily surrendered his licenses to be a massage therapist and to operate a massage therapy establishment.

3

Appellant was indicted for the sexual assault of the complainant. He pleaded not guilty, and the case went to trial.

During voir dire, the defense spent a significant portion of its time questioning the venire regarding the members' views relating to issues of fabrication by women claiming they have been sexually assaulted. First, the defense asked the venire, row by row, whether they had ever heard of someone being falsely accused of sexual assault. Defense counsel had discussions with several venire members regarding instances of when they had heard of someone being falsely accused of sexual assault.

The defense also asked the venire, "Who can think of a reason why a woman would falsely accuse a man of sexual assault?" The venire members offered several reasons such as: "money," "revenge," "regret," "anger," and "blackmail."

The defense then asked each member of the venire to indicate whether he or she strongly agreed or disagreed with the following statement: "A woman would not claim that she was sexually assaulted unless it was the truth." Defense counsel then had each of the 65 venire members individually state his or her response.

At trial, Appellant's defense focused on discrediting the complainant's allegations by showing that, if the assault had occurred as she claimed, someone would have heard her say to Appellant, "Oh, hell no you don't." H.G. testified at

4

trial. On cross-examination, H.G., testified that she did not hear any talking during her massage and did not hear the complainant say, "Oh, hell no you don't."

The complainant's husband also testified at trial. On cross-examination, the defense elicited testimony from him that he had telephoned Appellant and threatened to file a lawsuit against him, thus suggesting a motive for the false accusation.

During the presentation of its case, the defense offered the testimony of the other massage therapist, P. Geraldo, who had been working on the day of the incident. She testified that Scripa Massage occupied a tiny space. It had a small lobby, two areas with massage tables, and a restroom. Because of its small footprint and its layout, she stated that noise and conversations in one part of the facility would be heard in other parts of the space. Geraldo testified that customers complained that they could hear other conversations during their massages. She stated that the two massage areas were part of one room that had a divider separating the two spaces. The divider had an open space at the top and at the bottom. According to Geraldo, she could hear when people were speaking in the other massage area. She admitted, however, she could not hear everything that was said in the other area. Geraldo testified that she did not hear anything noteworthy while the complainant was having her massage. Geraldo stated that

she remembered the complainant leaving with her friend, H.G, that day. Geraldo testified that the complainant did not appear upset.

The defense also offered the testimony of the husband and wife who had a massage after the complainant and H.G. left. They testified that they did not remember seeing anyone leave upset that day. They also stated that, during their massages, they were able to have a conversation using normal voices through the divider that separated the two massage areas.

The defense also offered video evidence showing the interior of the facility. The defense emphasized the smallness of the space and showed that the divider between the two massage areas was made of a thin plastic material. The video also showed that there was a 13-inch space at the top of the divider and a six-inch space at the bottom. With the aid of a tape measurer, the video showed that the distance between the two massage tables was only 56 inches.

The defense recalled the complainant to testify in an attempt to show that her allegations had changed over time. The defense pointed out that, during the State's direct examination of her, the complainant had testified that there were "three different aspects of offensive activity" that occurred at the time of the incident. These were (1) Appellant inserting his fingers into her vagina, (2) Appellant exposing his penis, and (3) Appellant attempting to climb on top of her. The defense showed the complainant the police report that she had made following the

6

incident. The complainant acknowledged that she had not stated in the police report that Appellant had attempted to climb on top of her, even though on direct examination she had testified that this was part of Appellant's offensive activity.

The State requested to introduce testimony from another woman who claimed that Appellant had touched her vaginal area while he was giving her a massage. The State asserted that it sought to introduce the extraneous-offense evidence to rebut Appellant's fabrication defense. The prosecutor averred:

> It is clear both through cross-examination of the State's witnesses and through the testimony proffered by the defense itself that the defense to this case is fabrication, that the complainant and the witnesses that were there are fabricating this story. With that in mind, the State's position is that the extraneous offenses come in, that the extraneous witnesses should be allowed to testify.

The defense responded, "We have not presented any evidence of a fabrication defense at this point. All we've done is put on witnesses who said they couldn't hear." The defense further objected that the probative value of such evidence would be outweighed by unfair prejudice resulting from it.

The trial court granted the State's request to admit the extraneous-offense evidence. After the defense had put on its last witness, the State called J.P. to testify. Before J.P. testified, the trial court verbally gave the following limiting instruction to the jury, which was also included in the court's written charge:

> You are further instructed that if there is any evidence before you in this case regarding the defendant committing an alleged offense or offenses other than the offense charged against him in this indictment

7

or the indictment of this case, you cannot consider such evidence for any purpose unless you find from—unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, [plan], knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

J.P. testified that, on March 12, 2011, she went for a massage at Scripa Massage after obtaining an online coupon. J.P.'s boyfriend accompanied her and waited for her in the lobby while Appellant gave her the massage.

J.P. testified that Appellant spent the majority of the time massaging her buttocks with the sheet pulled down, which made her uncomfortable. Then, while J.P. was lying on her stomach, Appellant pressed his genitalia into her hand. J.P. jerked her hand away. She stated that she did not leave because she thought it might have been a mistake when he was leaning over her.

J.P. stated that Appellant then told her to roll onto her back, and she complied. Appellant continued to massage J.P. She testified that Appellant massaged her upper body, her left leg, and then her right calf. She stated it all seemed normal. However, after massaging her right calf for short time, Appellant quickly slid his hand up her leg and touched her genitalia.

J.P. told Appellant to take his hands off of her, and she left the massage room. After they left, J.P. told her boyfriend what had happened. J.P. filed a report with the TDSHS regarding the incident.

8

J.P.'s boyfriend, Evan, also testified. He stated that, while in the waiting room, he could hear people speaking in the massage room, but he could not understand what they were saying. Evan said that after they left, J.P. initially would not tell him what had happened. However, Evan stated that J.P. soon began crying and told him what Appellant had done to her.

In her closing argument to the jury, defense counsel told the jury that no one may ever know why the complainant "made up" the sexual-assault claim against Appellant. The defense stated that people make false claims for a variety of reasons, such as "a psychotic episode, fantasy, imagination, anger, [or] depression . . . ."

The jury found Appellant guilty of the offense of sexual assault. Following the punishment phase, the jury assessed Appellant's punishment at 10 years in prison and a $10,000 fine.[2]

This appeal followed. In one issue, Appellant complains that the trial court abused its discretion in admitting evidence of the extraneous offense committed against J.P. More particularly, Appellant asserts that the extraneous-offense

---

[2] During the punishment phase, the jury heard from yet another woman, R.M., who testified that she was victimized by Appellant during a massage. R.M. testified that, in February 2008, she went to Scripa Massage for a pregnancy massage. She was seven months pregnant at the time. R.M. testified that, during the massage, Appellant placed his penis in her hand three separate times. She stated that she did not leave immediately because she was afraid.

evidence was inadmissible under Rules of Evidence 404(b) and 403.[3]  TEX. R. EVID. 403, 61 TEX. B.J. 374, 376 (Tex. & Tex. Crim. App. 1998, amended 2015); TEX. R. EVID. 404(b), 61 TEX. B.J. 374, 378 (Tex. & Tex. Crim. App. 1998, amended 2015).

**Extraneous-Offense Evidence**

**A.      Standard of Review**

We review trial court rulings on the admissibility of evidence for abuse of discretion.  *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).  A trial court abuses its discretion when its ruling is arbitrary or unreasonable.  *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).  A trial court does not abuse its discretion if its decision is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

**B.      Rule 404(b)**

---

[3] Effective April 1, 2015, the Supreme Court of Texas has adopted amendments to the Texas Rules of Evidence.  *See* 78 TEX. B.J. 42, 42 (Tex. 2015).  The changes to Rules 403 and 404 are stylistic.  *See id.* at 49.  All further citations to Rules 403 and 404 in this opinion refer to the rules as they existed during Appellant's trial.

Rule of Evidence 404(b) prohibits the admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). However, when a party "opens the door," evidence that is otherwise inadmissible may become admissible. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). When a party opens the door, opposing counsel is permitted to present evidence to correct the mistaken impression. *Houston v. State*, 208 S.W.3d 585, 591 (Tex. App.—Austin 2006, no pet.); *see Hayden*, 296 S.W.3d at 554.

"'Rule 404(b) is a rule of inclusion rather than exclusion.'" *De La Paz v. State*, 279 S.W.3d 343, 336 (Tex. Crim. App. 2009) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

Extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Extraneous offenses may be admissible for some other purpose such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or

11

absence of mistake or accident. TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990). However, this list is illustrative; the listed exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz*, 279 S.W.3d at 343.

In addition to the listed exceptions, one rationale allowing admission of character evidence is to rebut a defensive theory. *Id.*; *see also Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (stating rebuttal of defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)"). The Court of Criminal Appeals has determined that extraneous offenses are admissible to rebut a fabrication defense. *See De La Paz*, 279 S.W.3d at 349–50.

In his brief, Appellant claims that the State did not raise the defense of fabrication because the defensive theory was not raised by his cross-examination of the complainant. Appellant asserts, "If the complainant is not vigorously cross-examined concerning fabricated testimony then an extraneous offense is not admissible on this ground." Appellant's assertion, however, is contrary to the holding in *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). There, the Court of Criminal Appeals held that remarks made by a defendant during opening statement, raising a defensive theory, may open the door to the admission of extraneous-offense evidence needed by the State to rebut that theory. *Id.*

12

Here, Appellant first raised the defensive theory of fabrication during voir dire. Defense counsel spent much of her time questioning the venire members regarding their views on whether they believed sexual assault victims frequently fabricate their allegations and whether they knew anyone against whom false charges had been made. Defense counsel also solicited reasons from the venire for why a woman might fabricate accusations of sexual assault. By thoroughly questioning the venire regarding issues related to fabrication, the defense indicated that the theory of fabrication was important to its case.

The defense continued to advance the defense of fabrication during its cross-examination of the State's witnesses. Defense counsel questioned the complainant regarding why she went home to call the police, rather than going directly to a police station near Scripa Massage. The defense suggested that if the complainant had gone directly to a police station perhaps forensic evidence could have been collected from the complainant's body. Counsel's questioning suggested the complainant did not immediately report the crime or otherwise act like a victim because, in fact, no assault was committed; that is, it was fabricated by the complainant. This theory was further suggested by the defense's questioning of the complainant about why she had failed to tell police that Appellant had attempted to climb on top of her during the incident.

13

Under the defense's cross-examination, the complainant's husband admitted that he had called Appellant and threatened to file a civil lawsuit. Such testimony suggested a motive for the complainant to fabricate the sexual-assault allegations.

The defense further developed its defensive theory of fabrication during the presentation of its evidence. As had H.G., Geraldo testified that she did not hear the complainant say, "Oh, hell no you don't." This testimony tied in with other evidence offered by the defense to demonstrate that it was highly unlikely that the complainant could have said this and not have been heard by either H.G. or Geraldo. The defense's evidence suggested that the assault never occurred because no one heard the complainant make the statement despite the cramped quarters and the building's acoustics. This in turn implied that the assault never occurred and that the complainant fabricated the allegations. This culminated in the presentation of the fabrication theory during closing argument:

> [I]magine any scenarios you can think of, anything where a man has just stuck his fingers into a woman's vagina and she says, "Oh, hell no you don't." Imagine any scenario where she says that nobody within an arm's reach can hear her. There is no scenario where that can happen. Nobody heard her say that. She says she said that, but nobody heard her say that. She says he had his penis out. When she's saying, "Oh, hell no you don't," her friend didn't hear her, [Geraldo] didn't hear her. And now, remember, this is a space that when measured—I don't know how long my arms are (indicating), but assuming they're a couple of feet each, that's—I mean my arm length is greater than the distance between these two massage tables. And there was no obstacle to sound. There's a 13-inch gap along the ceiling (indicating), a 6-inch gap in the bottom, gaps in the door and material like (indicating) would, if anything, certainly wouldn't

14

absorb any sound. I mean, there was nothing to prevent the sound of [the complainant's] voice carrying over to her friend next door. Yet, she heard *nothing*. She heard *nothing*. Now, [Geraldo] told you that she not only could hear voices and conversation. In fact, some of her—some of her massage clients had complained, asked them to quit talking. It's disturbing me. She not only could hear sounds of voices when there was conversation, but she could even hear the sheets hit the floor. She could hear the table when it moved because it squeaked. And you could see those massage tables in the pictures. And you'll get the pictures back there, but you could see the massage tables. They're just . . . like little plastic cots that sit up on tall legs. If you move on it, it's going to do something. She said it squeaked. She said she could hear sheets hit the floor. So, is it possible somebody could say in the throes of being violated as described to you, that somebody could say the words, "Oh, hell no you don't," jump off the table, the sheet hits the floor, and nobody heard anything? There's something wrong here. There's something wrong here. There's *some question* here.

(Emphasis in original.)

In sum, the trial record shows that Appellant was not simply attempting to demonstrate that the complainant generally lacked credibility or had a reputation for untruthfulness; rather, the defense was making accusations that the complainant had lied about a specific event—Appellant's penetration of her vagina with his fingers—under a specific set of circumstances. Given the record, it is at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the non-character-conformity purpose of rebutting Appellant's defensive theory that the complainant was lying about Appellant's sexual assault of her; that is, that she had fabricated her testimony. *See See De La Paz*, 279 S.W.3d at 346–47. Thus, we hold that the court did not abuse its discretion in admitting

15

the extraneous-offense evidence under Rule 404(b) to rebut the defense's theory that the complainant was lying about the occurrence of the sexual assault. *See id.* at 347.

## C.     Rule 403

Appellant further asserts that, even if he opened the door to the extraneous assault of J.P., the evidence was nonetheless inadmissible under Rule of Evidence 403. Rule 403 permits the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. When undertaking a Rule 403 analysis, a trial court must balance the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Rule 403 favors the admission of relevant evidence, and it carries the presumption that relevant evidence will be more probative than prejudicial. *Davis*

*v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Martinez*, 327 S.W.3d at 737. Further, Rule 403 does not require exclusion of evidence because it creates prejudice; rather, it must be shown that the prejudice is "unfair." *Martinez*, 327 S.W.3d at 737; *Mechler*, 153 S.W.3d at 440. Rule 403 contemplates the exclusion of evidence only when a clear disparity exists between the degree of prejudice of the offered evidence and its probative value. *Davis*, 329 S.W.3d at 806; *Gayton v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) (citing *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)).

Applying the first two factors, we examine the probative value of the evidence. The term "probative value" refers to "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806 (citing *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)); *Gigliobianco*, 210 S.W.3d at 641.

In our Rule 404(b) analysis, we determined that the extraneous-offense evidence was probative to rebut Appellant's defensive theory of fabrication. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). The extraneous offense is sufficiently similar to the charged offense to have probative value on this issue. *Id.*; *Bargas v. State*, 252 S.W.3d 876, 892–93 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

17

Furthermore, the trial court could have concluded that the State's need for the extraneous-offense evidence was considerable. Whether the assault occurred at all was the contested issue. There were no eyewitnesses and no physical evidence available to corroborate the complainant's testimony. *See Newton*, 301 S.W.3d at 320; *Bargas*, 252 S.W.3d at 893.

With respect to the third factor, extraneous-offense evidence of this nature does have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature. *See Newton*, 301 S.W.3d at 320. In addition, there is a tendency for evidence to suggest a decision on an improper basis when the subject matter is prior criminal conduct, particularly when the offenses are similar. Likewise, with respect to the fourth factor—"confusion of the issues"—a slight possibility existed that the jury would focus on the prior assaultive conduct rather than focusing on the charged offense. However, the danger of unfair prejudice and confusion of the issues were counter-balanced by the trial court's verbal and written limiting instruction. *See id*. Nevertheless, these two factors weigh slightly in favor of exclusion of the evidence. *Id.*

Under the fifth factor, we weigh any tendency of the evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. This factor concerns "a tendency of an item of

18

evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641 (citation omitted). Here, the complained-of testimony was not prone to this tendency, as it concerned matters easily comprehensible by the average person. This factor weighs in favor admissibility.

The final factor concerns whether the presentation of the extraneous offense evidence consumed an inordinate amount of time. *See id.* at 641–42. This factor focuses on the time needed "to develop the evidence, during which the jury [is] distracted from consideration of the indicted offense." *Mechler*, 153 S.W.3d at 441. Our review of the record shows that the testimony of J.P. and her boyfriend consisted of approximately 36 pages out of the approximately 350 pages comprising the presentation of evidence during the guilt-innocence phase. This factor weighs in favor of admission.

To summarize, four factors weigh in favor of admission and two factors weigh only slightly in favor of exclusion. After reviewing the record and weighing the necessary factors, we hold that the trial court did not abuse its discretion under rule 403 in admitting the extraneous-offense evidence.

We overrule Appellant's sole issue.

19

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

20